457 F.2d 788
 Trammell CROW and Albert Susman, Plaintiffs-Appellees,
v.
Charlie BROWN et al., Defendants-Appellants, and United
States Department of Housing and Urban Development, George
Romney, etc., et al., Defendants, The Ervin Company,
Intervenor-Appellee, Samuel Carr and Hattie Mae Calhoun,
Plaintiff-Intervenors-Appellees.
Samuel CARR and Hattie Mae Calhoun, etc., Plaintiffs-Appellees,
v.
Charlie BROWN et al., Defendants-Appellants.
 Nos. 71-3466, 71-3467.
 United States Court of Appeals,
Fifth Circuit.
 March 15, 1972.
 
 Robert G. Young, Atlanta, Ga., for Charlie Brown and others.
 John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for H.U.D. and Romney.
 King & Spalding, Atlanta, Ga., for Persells.
 Moreton Rolleston, Jr., Atlanta, Ga., for Crow & Susman.
 Ralph H. Witt, Hoke Smith, Atlanta, Ga., for Ervin Co.
 Henry L. Bowden, John R. Myer, Robert B. Newman, Atlanta, Ga., for Carr and Calhoun.
 Jack H. Watson, Jr., Atlanta, Ga., for The City of Atlanta.
 Before WISDOM, GODBOLD and RONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 The district court accurately and succinctly stated the issue in these consolidated cases:
 
 
 2
 The broad issue raised by these plaintiffs here . . . is whether the Fourteenth Amendment to the United States Constitution prohibits the County defendants from exercising whatever discretion allowed by municipal law for the avowed purpose of excluding low-income blacks from apartments proposed for construction on land zoned for apartments.
 
 
 3
 Crow v. Brown, N.D.Ga.1971, 332 F.Supp. 382, 393. The district court found:
 
 
 4
 While poor blacks have been attracted to the low-rent public housing in Atlanta and the city's problems have rapidly mounted, whites have been fleeing in increasing numbers. In 1960 35% of the residents of Atlanta were black; today 51% are black. The public school population of Atlanta was 30% black; today it is 70% black. A fair percentage of the whites leaving Atlanta have moved to the unincorporated areas of Fulton County; a similar percentage of blacks from those areas have moved to the city.
 
 
 5
 Within the immediate future, unless drastic changes occur, it is not merely possible but certain that Atlanta will become, in essence, a black city with a solid white perimeter. These two lawsuits, though analytically different, have been consolidated by this court because together they involve a plan to prevent this from happening to Atlanta by having some low-rent public housing built in unincorporated Fulton County. Some may say that this plan is unwise or that it may not succeed. It is not for this court to make such a determination. Unquestionably the design of the plan is to alleviate to some degree the crisis now at hand in Atlanta, and the goal of the plan is to preserve Atlanta's future as a city in which both whites and blacks may live.
 
 
 6
 The plaintiffs, Crow and Susman, and plaintiff-intervenor Ervin Company own tracts of land in an unincorporated area of Fulton County, Georgia. They propose to build low-rent public housing on their land some distance away from the racially concentrated areas of Fulton County. They have been frustrated in their efforts by the refusal of Fulton County officials to issue building permits to them, allegedly for racial reasons. The plaintiffs and plaintiffs-intervenors, Carr, and Calhoun, sue on behalf of themselves and all other eligible persons currently on the waiting list of the Atlanta Housing Authority for lowrent public housing. They allege that they are being denied access to public housing outside of the racially impacted areas of Fulton County because of the actions of the County officials. The district court granted comprehensive relief.
 
 
 7
 Although the jurisdiction of the Atlanta Housing Authority extends ten miles beyond the city limits of Atlanta into unincorporated Fulton County, public housing is located almost exclusively in the areas of Fulton County with the heaviest concentration of black residents. "Of the 14,000 units of public housing, 55.7% are located in areas which are 90% to 100% black, and another 19.4% in areas which are 70% to 90% black." 322 F.Supp. at 383. This policy causes and perpetuates residential racial segregation. The record is clear that the County officials denied building permits to Crow, Susman, and Ervin Company for the purpose and foreseeable result of continuing the present pattern of racial segregation.
 
 
 8
 The district court's findings of fact are not clearly erroneous. See F.R.C.P. 52(a). The district court accurately and incisively stated and applied the legal principles applicable to the issues raised in this case. We affirm for the reasons stated in the opinion of the district court reported at 332 F.Supp. 382.
 
 
 9
 The Court has considered all of the contentions raised on appeal, including those addressed to the plaintiffs' standing to sue, the validity of the intervention by Ervin Company, the effectiveness of the class action, res judicata, and the compliance of the Atlanta Housing Authority with the requirements of Title 42, Section 1415(7). We have noted that in oral argument counsel for the City of Atlanta and the Atlanta Housing Authority in effect agreed with the position of plaintiffs-appellees.
 
 
 10
 The judgment is affirmed.