**Benjamin BISHOP et al., Plaintiffs,**

**v.**

**William PECSOK, Defendant.**

**No. C75–486.**

United States District Court,
N. D. Ohio, E. D.

June 18, 1976.

Avery S. Friedman, David L. Hoehnen, Cleveland, Ohio, for plaintiffs.

William B. Pecsok, Shaker Heights, Ohio, for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

This case came for trial on the plaintiffs', Benjamin and Francene Bishop's, allegations that the defendant, William Pecsok, had denied them housing opportunities on the basis of race, thereby violating 42 U.S.C. §§ 1981, 1982, 3604 and 3617. Jurisdiction is properly invoked under 28 U.S.C. § 1343(4), *see, Jones v. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), and 42 U.S.C. §§ 3612 and 3617.

The Court, sitting without a jury, having heard the evidence of the witnesses, having examined the documentary evidence submitted by both parties and having heard the arguments of counsel, makes the following findings of fact and conclusions of law:

### Findings of Fact

The plaintiffs Benjamin and Francene Bishop are husband and wife; Benjamin Bishop is white and Francene is black. During the period in question, May of 1975, Mr. Bishop was enrolled in the M.B.A. Program at Case Western Reserve University, as a scholarship student. While attending

school he worked part-time. Mrs. Bishop was a student at Cleveland State University from which she had received several scholarships as well as financial aid. She worked part-time between January and May of 1975 and full time after graduating from college in June of 1975. The Bishops' combined earnings between January and May, 1975 were approximately $3,000. Their total earnings in 1975 were $9,663.62.

In April of 1975 Mr. Bishop looked at a vacant apartment in an apartment complex owned by the defendant, Mr. Pecsok. He telephoned Mr. Pecsok who told him the apartment was available for rental. A meeting was arranged between the Bishops and Mr. Pecsok for May 15, 1975, to sign a lease and to make a downpayment on Apartment Number 9. Before May 15 Mr. Pecsok had not met the Bishops in person. Defendant testified he knew that Mrs. Bishop was black prior to meeting her; this testimony was unsupported, and the court finds otherwise.

At the May 15 meeting the plaintiffs offered to rent the vacant apartment owned by Mr. Pecsok for the amount he quoted over the telephone. The defendant rejected the offer. The reasons he gave for his rejection were that he only rented to graduate students and to those who were financially able to pay the required rent of $165. He determined that the plaintiffs were unqualified under either standard. Defendant assumed this position *despite* being made aware of Mr. Bishop's enrollment in a *graduate program* and the impending *full-time employment of Mrs. Bishop.* After the defendant refused to rent them the apartment Mrs. Bishop inquired if her race had anything to do with his refusal. Mr. Pecsok said not necessarily. A long discussion of racial issues then took place, in which Mrs. Bishop was told by the defendant that blacks were responsible for most crime in America, that they should be shipped back to Africa, and that he, Mr. Pecsok, does not allow blacks in his building because their friends would hang around and terrorize the other tenants in the building. Mrs. Bishop stated that she was of-fended and deeply humiliated by the rejection of her and her husband's application which she considered to be racially motivated.

The defendant insisted at trial that he had rejected the plaintiffs because they had not met his objective requirement of tenancy, i. e., being graduate students and having a certain financial status so as to be clearly capable of paying the rent. The evidence in the case does not support this assertion. This Court finds that if the defendant had used the objective criteria which he testified he applied, the plaintiffs clearly would have qualified, as Mr. Bishop was enrolled in a graduate degree program and had sufficient financial resources to pay the $165 rent. More importantly it is clear that Mr. Pecsok did not have the rigid criteria for tenancy that he claimed, as numerous white undergraduates were rented apartments by the defendant, (see testimony of Picorelli, Zingale, Champa, Bruck, Kollis); and numerous whites were rented or offered the rental of apartments by defendant without inquiry into their financial status, (see testimony of Anderson, Kollis, Champa, Zingale).

The question is if the defendant did not use the objective criteria of graduate standing and financial capability as his reasons to reject the Bishops, then on what did he rely to reject them? This Court finds that the defendant rejected the application of the Bishops because of Mrs. Bishop's race. This conclusion is warranted from the facts already discussed and from two additional facts. The first is established by the testimony of Susan Bilyou. Miss Bilyou telephoned the defendant about renting an apartment. During the conversation the defendant agreed to let her inspect an apartment. He then asked if she was black. When she responded in the affirmative he said he did not rent to blacks as it would upset his other tenants. The second fact is that from the evidence in the case it was established that no blacks lived in Mr. Pecsok's apartment complex in May of 1975 and few, if any, ever lived there, (see testimony of Pecsok).

■ In conclusion it is this Court's finding that 1) the defendant rejected the plaintiffs' offer to rent at a price previously agreed upon; 2) plaintiffs met the alleged standards of the defendant for acceptance as tenants; 3) defendant did not apply any set standards to other tenants or prospective tenants; 4) few, if any, blacks had ever resided in the defendant's apartment complex; and finally, 5) the defendant knowingly and with the intent to exclude blacks from his apartment complex, rejected the application for rental by the plaintiffs because of Mrs. Bishop's race.

### Conclusions of Law

#### I.

■ 42 U.S.C. §§ 1982[1] and 3604[2] prohibit inter alia the refusal to rent[3] because of the race[4] of a prospective tenant. See, e. g., Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Hollins v. Kraas, 369 F.Supp. 1355 (D.C.Ill.1973).

■ Race cannot be the sole reason for rejecting a prospective tenant; see, Bush v. Kaim, 297 F.Supp. 151, 161 (N.D.Ohio E.D., 1969), nor can it be any part of the reason that a prospective tenant is denied housing. See, e. g., Smith v. Sol D. Adler, 436 F.2d 344, 349–350 (7th Cir., 1970).

The defendant claims that he rejected the plaintiffs' application for housing on the basis of objective standards employed across-the-board to all applicants without regard to race. This defense is without merit. The facts, as found by this Court disclose that the defendant had no set of standards by which to measure applicants for housing. The only set objective criterion that the defendant adhered to, uniformly, was the rejection of black applicants.

■ Further, even if the defendant had been able to prove that he used objective criteria which were, on their face, neutral as to race, he still would have violated Title VIII, 42 U.S.C. § 3604. Objective criteria cannot have the effect of excluding blacks from housing unless the criteria are demonstrably a reasonable measure of the applicants' ability to be a "successful tenant."[5] See, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Williams v. Matthews Company, 499 F.2d 819, 828 (8th Cir., 1974). Here defendant Pecsok failed to carry his burden of proving that his criteria were neutral because he was unable to establish that his criteria furnished a reasonable measure of whether an applicant would be a "successful tenant."[6]

---

1. 42 U.S.C. § 1982 reads:
   "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

2. 42 U.S.C. § 3604 reads in part:
   ". . . it shall be unlawful
   "(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin."

3. This action was brought timely. 42 U.S.C. § 3604 actions must be brought within 180 days of the alleged discrimination, (see 42 U.S.C. § 3612). 42 U.S.C. § 1982 must be brought within six years of the alleged discrimination. See, O.R.C. § 2305.07. Cf. Mason v. Owens-Illinois, Inc., 517 F.2d 520 (6th Cir., 1975). This action was commenced on June 9, 1975 well within both time limitations.

4. Mr. Bishop is a sufficiently aggrieved party as to have standing to maintain this suit. See, Trafficante v. Metropolitan Life Insurance Company, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

5. This Court defines "successful tenant" as one who stays for the period of the lease, pays his rent timely, and complies with all other provisions of the lease.

6. Some of the criteria used, such as whether an applicant is an undergraduate or not, whether he or she comes from a good family, the grades that the applicant got at school, are not demonstrably related to whether the applicant will be a successful tenant. Others, such as the income of the applicant, are; but, as a whole, the tests used here were not demonstrated to be a reasonable measure of applicants' ability to be successful tenants.

It is therefore this Court's conclusion that the defendant has violated 42 U.S.C. §§ 1982 and 3604 by rejecting the plaintiffs' application on the basis of race.

## II.

Liability having been established, this Court turns to a determination of the nature of the damages to be allowed.

The plaintiffs have prayed for $8,500 compensatory, $10,000 punitive, and reasonable attorneys fees. In calculating the amount of compensatory damages this Court is required to consider not only out-of-pocket expenses, but also the emotional distress and humiliation suffered by plaintiffs. *See, e. g., Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119, 1121 (7th Cir., 1974); *Williams v. Matthews Company,* 499 F.2d 819, 829 (8th Cir., 1974). This Court accordingly awards plaintiff $1,500 compensatory damages.

Punitive damages shall be granted only in those cases under 42 U.S.C. § 1982 and § 3604 in which the court finds that the defendant acted wilfully and in wanton and malicious disregard for the rights of the plaintiffs. *See, e. g., Seaton v. Sky Realty Company, Inc.,* 491 F.2d 634, 638 (7th Cir., 1974); *Tillman v. Wheaton-Haven Recreation Association, Inc.,* 367 F.Supp. 860, 864 (D.Md.1973). This Court has found the defendant acted wantonly and maliciously and in wilful disregard for the right of Mr. and Mrs. Bishop. The Court awards $5,000 as punitive damages.[7]

Reasonable attorneys fees may be awarded under 42 U.S.C. 3612(c) to a prevailing party, provided that the plaintiffs are unable to assume the burden of attorneys fees. *See, Marr v. Rife,* 503 F.2d 735 (6th Cir., 1974). In light of the plaintiffs' combined earnings in 1975 of $9,663.62 this Court finds they are unable to bear the cost of attorneys fees. The defendant is ordered to pay $3,500 in attorneys fees.

In summary, the defendant is ordered to pay $1,500 compensatory damages, $5,000 punitive damages, and $3,500 attorneys fees, for a total of $10,000.

This Memorandum is adopted as Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Fed.R.Civ.P.

---

7. 42 U.S.C. § 3612(c) limits punitive damages to $1,000. 42 U.S.C. § 1982 has no fixed limit on punitive damages.