James J. LIOTTA

v.

NATIONAL FORGE COMPANY.

Civ. A. No. 78–25 Erie.

United States District Court, W. D. Pennsylvania.

July 11, 1979.

Staughton C. Lynd, Youngstown, Ohio, M. L. Carr, Erie, Pa., for plaintiff.

Richard H. Zamboldi, Erie, Pa., for defendant.

## MEMORANDUM OPINION

KNOX, District Judge.

Plaintiff, formerly the President of Steelworkers' Local 1573, was discharged from his employment with defendant on March 16, 1976 following his participation in a work stoppage at defendant's Erie, Pennsylvania plant which began on March 3, 1976 and ended on March 11, 1976. Under the terms of the collective bargaining agreement in effect at the time, plaintiff filed a grievance which was denied by an arbitrator on August 3, 1976. On March 16, 1978, plaintiff filed this action alleging that (1) the union breached its duty of fair representation in processing his grievance (see § 301 of the National Labor Relations Act, 29 U.S.C. § 185) and (2) although plaintiff is white, defendant discriminated against him by discharging him because of his espousal of the rights of defendant's black employees (see 42 U.S.C. § 1981). Defendant initially filed a motion for summary judgment on both counts of the complaint on August 10, 1978. Determination of this motion was postponed pending the completion of discovery. On April 2, 1979, defendant renewed its motion. Extensive briefs and supporting affidavits and exhibits were received from both parties and oral argument was heard by the court on May 22, 1979. After careful consideration of the issues presented by defendant's motion, the court has determined that the motion will be granted with respect to both counts of the complaint.

### (I) Count I—29 U.S.C. § 185

We begin with the rule that summary judgment can be granted only where there is no genuine issue as to any material fact. Further, all inferences and doubts must be resolved against the moving party. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3rd Cir. 1978).

Ordinarily, where a collective bargaining agreement provides for the arbitration of grievances, the arbitrator's decision is final and binding on the parties and not

subject to review by the courts. *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). In cases in which the union breaches its duty of fair representation in handling the employee's grievance, however, this finality rule is inapplicable. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Supreme Court in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), held that a plaintiff must prove (1) "an erroneous discharge" and (2) "the Union's breach of duty [of fair representation]" which (3) "taint[s] the decision of the [arbitrator]," *Id.*, at 572, 96 S.Ct. at 1060, in order to come within this exception to the finality rule. Thus, in order to prove his § 301 claim, plaintiff must establish that defendant breached the collective bargaining agreement by discharging him, that the union breached its duty of fair representation in its conduct of the arbitration, and that this breach by the union contributed to the arbitrator's erroneous decision.

(A) Propriety of Plaintiff's Discharge

The collective bargaining agreement in effect at the time of plaintiff's discharge provides:

ARTICLE VII

Section 8. . . .

(c) In the event of any violation of the provisions of subparagraph (b) above [forbidding work stoppages], the Union shall make immediate, sincere and diligent effort to terminate all such improper action and any employee or employees taking part in, causing or inciting any such improper action may be subjected to disciplinary action including discharge, *which disciplinary action need not be the same for all such employees*. In the event of any arbitration arising out of Company action pursuant to this subparagraph (c), *the sole question for determination by the Arbitrator shall be whether or not the grievant did take part in*, or did cause, or did incite, whichever is charged, *the improper action*. (Emphasis added). (Exhibit A to defendant's Answer).

Under the explicit terms of this agreement, the arbitrator's role was limited "to determine only whether or not each grievant did take part in the illegal strike." Arbitrator's Decision at 9, Exhibit B to defendant's Answer. One of the bases for the arbitrator's denial of plaintiff's grievance in this case was his finding that plaintiff failed to comply with a March 8, 1976 request made by Chief Judge Weber of this court during a hearing on a motion for contempt that the officers of the Local, including plaintiff, would report to work by the 7 a. m. shift on March 9, 1976 and then clock out and travel to the court at 10 a. m., if necessary, to continue the contempt hearing. The primary dispute in this case in connection with the propriety of the discharge concerns the nature of this request and plaintiff's knowledge of it.

At the arbitration hearing, defendant's counsel, Richard Zamboldi (Zamboldi), testified as to his recollection of the agreement reached. He stated that at Judge Weber's behest, all counsel agreed that the union officers would lead the rank and file members into the plant at 11 p. m. on March 8 or at 7 a. m. on March 9, at the latest. (Tr. 298–307, defendant's summary judgment exhibit A). Affidavits of the union attorneys present on that day were submitted to the arbitrator on plaintiff's behalf. These affidavits state generally that none of these attorneys stated to anyone that plaintiff agreed to this request. (Defendant's summary judgment exhibit B).

The most persuasive evidence concerning the nature of the March 8 agreement reached in Judge Weber's chambers is contained in the transcript of an in-chambers conference held on the following day together with the testimony of plaintiff at a March 22 contempt hearing and at the arbitration hearing held on June 12, 1976. At the March 9 in-chambers conference, Judge Weber stated:

THE COURT: . . . But we had a pretty clear statement yesterday, and one of the few things that will stick in my mind, because when it was said that they would try to get back to work tomorrow, it was asked what about the officers, if

they have to come to court, and it was a clear understanding in this court's mind that they would report for work and then come down here. For their convenience the case was not scheduled until 10:00 a. m. . . . But I am sure that it was made clear yesterday that the union officers whose presence might be required at this hearing would report. Furthermore, this hearing was scheduled at 10:00 this morning, and only tentatively scheduled, conditioned on a return to work. . . (Tr. 4, 5, 18, defendant's summary judgment exhibit D).

Subsequently, Judge Weber issued an order holding the union and its members in contempt of court. (Defendant's summary judgment exhibit F). The order states in pertinent part that:

. . . despite specific telegraphic requests by the Company, the Local Union Officers and Committeemen have failed and refused to return to work, [a]nd . . despite the urgings of this Court, the employees of Plaintiff represented by Local Union 1573 have failed and refused to return to work at 11:00 P.M., March 8, 1976 and at 7:00 A.M., March 9, 1976

. . . .

On March 22, 1976, during further contempt proceedings held before Judge Weber, plaintiff testified that he was confused about whether he was to report at 11 p. m. or 7 a. m., but he acknowledged that he understood that the agreement was that the officers would check into work and then report to court. (Tr. 23–4, defendant's summary judgment exhibit C). At his arbitration hearing held on June 12, 1976, plaintiff initially denied that he had an obligation to report for work. Later, however, after examining the March 22 transcript, plaintiff testified that such a commitment "might have been" made. (Tr. 442, defendant's summary judgment exhibit A).

Plaintiff argues that Zamboldi's testimony was improper and that it could have been rebutted by live testimony from attorneys John English, Jr., George Schroeck, and George Levin, each of whom was present at the March 8 conference and each of whom has presented an affidavit to the court denying that any agreement that plaintiff would lead a group of employees into the plant was made. (Plaintiff's summary judgment exhibits 6a–6e). Although Zamboldi's testimony may have been excludable under DR 5–102(A), the court finds, as discussed in Part II of this opinion, that its admission into evidence does not require a reversal of the arbitrator's decision. Further, the court notes that the original affidavits of English, Schroeck and Levin were received by the arbitrator. (Defendant's summary judgment exhibit B). The supplemental affidavits submitted to the court in connection with this motion are not significantly different from the originals.

The court has thoroughly reviewed the voluminous transcripts and affidavits bearing on the March 8 conference and has concluded that the plaintiff was obligated to report to work on March 9, that he failed to do so, and that his discharge was not erroneous. The court finds significant the fact that, for the convenience of the union officers, the hearing on March 9 was not scheduled until 10 a. m., thus affording them an opportunity to punch in at work at 7 a. m. and then report to the court. Judge Weber's recollection of this scheduling arrangement is substantiated by the deposition testimony of George Levin. (Tr. 22, plaintiff's summary judgment exhibit 8e). It is highly improbable that Judge Weber would have scheduled the hearing at a time which permitted the officers first to clock in at the plant and then travel to the courthouse if there had been no agreement that they would, in fact, report to work on March 9. Although plaintiff testified that he was confused as to whether he was to report at 11 p. m. on March 8 or at 7 a. m. on March 9, the evidence supports the arbitrator's finding that he knew he was to report. His failure to report at either hour justifies his discharge under the terms of the contract.

In addition to his participation in the work stoppage, plaintiff's discharge was also based on his failure to fulfill his duties

as a union officer. (Plaintiff's summary judgment exhibit 7o). Plaintiff contends that the current state of the law as interpreted by the National Labor Relations Board is that an employer may not discipline a union officer in a manner different than it disciplines any other employee because of the officer's failure to perform the duties incumbent upon him as an officer. Precision Casting Co., 233 NLRB No. 35, 96 LRRM 1540 (1977).[1] The court, however, finds the reasoning of the United States Court of Appeals for the Seventh Circuit in *Indiana & Michigan Electric Co. v. N. L. R. B.*, 599 F.2d 227, 101 L.R.R.M. 2475 (1979) persuasive. The Court in that case rejected the Precision Casting view and stated that:

> Differentiating between union officers and rank-and-file in meting out discipline for participating in a clearly illegal strike did not penalize or deter the exercise of any protected employee right. We believe that the employer was entitled to take into account the union officials' greater responsibility and hence greater fault, and that the resulting different treatment of union officials could not be reasonably considered inherently destructive of important employee rights. *Id.*, 599 F.2d at 232, 101 L.R.R.M. at 2478.

Thus, it was proper for defendant to discharge plaintiff, the union president, while retaining other employees who also participated in the strike.

(B) Duty of Fair Representation

■ Even if plaintiff's discharge was erroneous, the decision of the arbitrator is final unless plaintiff establishes a breach by the union of its duty of fair representation which caused the arbitrator to reach an incorrect decision. In order to establish the requisite breach of duty, plaintiff must prove that the union's conduct was "dishonest, in bad faith, or discriminatory." *Hines*, supra, at 571, 96 S.Ct. at 1059. Errors in judgment or negligence on the part of the union representative are insufficient.

■ In the instant case, four of plaintiff's objections to the manner in which the union's attorney, Frank Lucchino (Lucchino), represented him at the arbitration hearing merit attention. First, plaintiff argues that the union breached its duty of fair representation when Lucchino failed to object to Zamboldi's testimony on the ground that he violated DR 5–102(A) of the Code of Professional Responsibility when he was examined by a member of his law firm about the March 8 conference. Although Lucchino may have made an error in judgment by failing to object to this testimony, and although a proper objection may have resulted in its exclusion, this failure does not rise to the level of dishonest, bad faith, or discriminatory conduct. Even if this testimony had been excluded, the arbitrator still would have had the transcript of Liotta's testimony at Judge Weber's March 22 hearing before him. (See defendant's summary judgment exhibit A, at 443). This exhibit contains most of the substance of Zamboldi's testimony and an admission by plaintiff that he knew he was to report to work on March 9. Therefore, even in the absence of Zamboldi's testimony, as significant as it may have been to the arbitrator's decision, the arbitrator was confronted with other, substantially similar evidence. Consequently, we cannot say that the exclusion of Zamboldi's testimony would have resulted in a different decision.

■ Similarly, plaintiff's objection to Lucchino's failure to call Levin, Schroeck, and English to rebut Zamboldi's testimony is insufficient to support a finding of breach of duty. Affidavits from each of these attorneys were admitted into evidence (see App. to defendant's summary judgment exhibit B), thereby precluding cross-examination of the attorneys by the company's counsel. The decision not to call these individuals was, at most, an error of judgment.

■ Plaintiff's third objection to the union's representation of him relates to Luc-

---

1. The court wishes to advise counsel that the government does not provide loose leaf services for the court. Therefore, when a West citation is unavailable, the court requests counsel to provide copies of the significant opinions upon which they rely.

chino's failure to protest the continuation of the hearing due to the unavailability of plaintiff's physician, Dr. Jack H. Marshall. Medical reports from Dr. Marshall, however, were received into evidence. (Tr. 424–5, defendant's summary judgment exhibit A). The court notes that although plaintiff testified at the hearing about both his illness and Marshall's unavailability, he at no time requested that Marshall's testimony be considered or stated that his appearance was crucial. The court concludes that the failure to seek a postponement of the hearing until Dr. Marshall could be present does not constitute a breach of duty by the union.

■ Finally, plaintiff contends that although his personal counsel, James Logan (Logan), was present for most of the hearing, he was not in the room when Zamboldi testified and he was at the hearing as an observer only and not as a participant. Consequently, plaintiff argues that Logan's responses to the arbitrator at the conclusion of the hearing that, "Your honor, we have absolutely no objection to the way this hearing before the Arbitrator was conducted. . . . It [Lucchino's representation of Liotta] was very good," (Tr. 449–50, defendant's summary judgment exhibit A), should not be taken literally. As discussed previously, Lucchino's failure to object to Zamboldi's testimony and his subsequent decision not to call other witnesses to rebut that testimony do not amount to a breach of duty. Therefore, Logan's absence during Zamboldi's testimony and his inability to object to it as a participant are irrelevant. Further, plaintiff's argument that Logan did not wish to offend the arbitrator by objecting to the conduct of the hearing and his contention that the arbitrator's questions to Logan concerning his evaluation of the hearing were improper are without merit. Had plaintiff's personal representative been dissatisfied with the conduct of the hearing, he was given the opportunity to register his complaint on the record. Not only did he fail to object, but he stated affirmatively that Lucchino's handling of the hearing was "very good." Such a response negates any claim of unfair representation.

Consequently, the court finds that the union's representation of plaintiff was not perfunctory or conducted in bad faith, dishonestly, or discriminatorily. Individually and collectively, any errors in judgment made by the union's attorney do not constitute a breach of the union's duty of fair representation. Therefore, plaintiff's § 301 claim against defendant must fail.

## (II) Count II—42 U.S.C. § 1981

Count II of plaintiff's complaint is brought pursuant to 42 U.S.C. § 1981 which provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Although plaintiff is white, he contends that his discharge resulted, at least in part, from retaliation against him for his espousal of the rights of defendant's black employees.

■ It is well settled that § 1981 prohibits racial discrimination in private employment against whites as well as blacks. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). A § 1981 cause of action may also be based on allegations of retaliation against a white person for advocating the rights of blacks. See *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2nd Cir. 1975); *National Organization for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338 (D.Conn.1978); *Garcia v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 80 F.R.D. 254 (N.D.Ill.1978); *Cubas v. Rapid Am. Corp., Inc.*, 420 F.Supp. 663 (E.D.Pa.1976).

Recently, the Supreme Court held that a male employee who claimed that he was discharged for supporting equal employment opportunities for females could not invoke 42 U.S.C. 1985(3) to redress a corporate conspiracy to violate Title VII of the Civil Rights Act of 1964. *Great Am. Fed. Savings & Loan Assoc. v. Novotny,* —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). The Court reasoned that § 1985(3) is a remedial statute, and that permitting Title VII rights to be asserted through § 1985(3) would alter Title VII's time limitations and bypass its administrative enforcement.

*Novotny,* however, does not preclude plaintiff's § 1981 count in this case. Unlike § 1985(3), § 1981 is a substantive statute. Further, the Supreme Court has stated that, "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Finally, in *Novotny* the Court distinguished § 1981 cases from the case before it. The Court concluded that:

> This case thus differs markedly from the cases recently decided by this Court that have related the substantive provisions of last century's Civil Rights Acts to contemporary legislation conferring similar substantive rights. In those cases we have held that substantive rights conferred in the 19th century were not withdrawn, *sub silentio,* by the subsequent passage of the modern statutes. . . . [I]n *Johnson v. Railway Express Agency,* [supra], we held that the passage of Title VII did not work an implied repeal of the substantive rights to contract conferred by the [Civil Rights Act of 1866] and now codified, at 42 U.S.C. § 1981. —— U.S. at ——, 99 S.Ct. at 2351.

We have determined, of course, that the arbitrator's decision upholding plaintiff's discharge under the collective bargaining agreement was correct. Contrary to defendant's argument, however, the arbitrator's finding is not binding on this court in a civil rights action. In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that

> . . . the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate. [footnote omitted]. *Id.,* at 59–60, 94 S.Ct. at 1025.

Although *Alexander* was a Title VII case, we see no reason to distinguish its holding in this case.

In dual-motivation employment discrimination cases, the Supreme Court has held that the plaintiff has the initial burden of showing that his conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the defendant's decision to discharge him. The burden then shifts to the defendant to establish that it would have discharged the employee "even in the absence of the protected conduct." *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). This "but for" test has been applied in § 1981 cases. *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

Although under *Alexander* the arbitral decision is no bar to plaintiff's claim, plaintiff has failed to meet his burden of establishing that racial discrimination was a substantial factor in the defendant's decision to discharge him under *Mt. Healthy.* The only evidence which plaintiff has submitted to the court in support of his allegations is a letter from Bobby Kaigler, Compliance Officer of the Erie Human Relations Commission (EHRC), which states that plaintiff testified before the EHRC on behalf of black complainants who were dis-

charged by defendant and that "It is the belief of this office that Mr. James Liotta was terminated from his job because of his constant fight for 'Equal Rights' of all men." (Plaintiff's summary judgment exhibit 7n). This letter is not an affidavit and it has not been notarized. Consequently, the conclusory "belief" expressed in the letter, which is not based on personal knowledge, is insufficient to create or support an inference that racial discrimination played any part in plaintiff's discharge. *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141 (3rd Cir. 1972). No genuine issue of material fact supporting plaintiff's § 1981 claim has been presented by plaintiff's evidence. Therefore, defendant's motion for summary judgment will be granted on Count II.

An appropriate order will be entered.