Howard **GORDON** and T. W. **Duncan,** **d/b/a Cartersville Manor Apartments,** **Ltd., a Limited Partnership, G. W. Myr-** **ick, and Ruby A. Wilson, Plaintiffs,**

v.

The **CITY OF CARTERSVILLE, GEOR-** **GIA, a Municipal Corporation, John W.** **Dent, Individually and as mayor of the** **City of Cartersville, Walter Mahone, In-** **dividually and as City Manager of the** **City of Cartersville, Clarence Benham,** **R. Gary Bradley, Edsel W. Dean, Marvin** **W. Mitchell, Individually and as Mem-** **bers of the City Council of the City of** **Cartersville, John Davis, William Wom-** **ack, Robert Dabbs, and Peter Alday, In-** **dividually and as Members of the Car-** **tersville Board of Zoning Appeals, De-** **fendants.**

Civ. A. No. C81–65R.

United States District Court, N. D. Georgia, Rome Division.

Sept. 25, 1981.

---

Burt DeRieux, Eileen Crowley, Teresa Dennon, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for plaintiffs.

David Archer, Archer & Elsey, Cartersville, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This civil action was brought by a partnership which sought to construct and operate low-income racially integrated housing in Bartow County along with two[1] individual residents of the County, against the City of Cartersville, the mayor, city council members, city manager, and the members of the Board of Zoning Appeals, all of whom thwarted the partnership's plans by denying necessary building permits for, and water line access to, the proposed sites.

Plaintiffs bring this suit under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3) and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* They contend that the defendants' conduct was motivated by discriminatory animus. They seek only monetary relief.

Before the Court is defendants' motion to dismiss the complaint. In a prior order, this Court disposed of many of defendants' arguments. However, additional briefs were solicited on the question of standing. De-

fendants contend that the developers may not assert the rights of minorities or low-income individuals, and are thus barred from maintaining this action. Plaintiffs counter that numerous Supreme Court decisions have granted standing to a non-minority if a relationship exists between the non-minority and the minority. *See e. g. Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). Plaintiff then points to the relationship between a developer and prospective tenants as satisfying this test.

On a motion to dismiss, of course, the Court accepts as true all material allegations of the complaint, as well as all inferences which reasonably may be drawn from the facts alleged. *Schuler v. United States,* 617 F.2d 605 (D.C.Cir.1979). When the motion to dismiss is premised on a theory that the plaintiff lacks standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

"Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal ... it often turns on the nature and source of the claim asserted." *Warth, supra,* at 500, 95 S.Ct. at 2206. Because the plaintiff proceeds on five separate statutory grounds, the Court must examine the plaintiff's standing in light of the separate causes of action.

### I. § 1981 and § 1982[2]

The framework in which a standing issue is analyzed was formulated in

---

1. The Court dismissed one of the individual plaintiffs, G. W. Myrick, pursuant to his request.

2. These Civil Rights statutes provide,

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C. § 1981.

   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
42 U.S.C. § 1982.

*Warth, supra.* The test has two parts: first, the plaintiff must satisfy the Article III requirement that there be a case or controversy. Injury in fact—or threatened injury—satisfies this prerequisite. *Warth* at 498–99, 95 S.Ct. at 2204–05. The injury must be a result of the allegedly illegal acts of the defendant, but the magnitude of the injury is of little import. Of course, the economic injury suffered by the developers in this case satisfies this requirement.

The second part of the standing test involves what the Court labels "prudential limitations." The first such limitation is that a plaintiff may not base his claim on an abstract grievance "shared in substantially equal measure by all or a large class of citizens." *Warth* at 499, 95 S.Ct. at 2205. This presents no problem to the plaintiff.

■ The second prudential limitation directs that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth* at 499, 95 S.Ct. at 2205. Thus, even though the plaintiff may have suffered grievous harm as the result of the violation of a third party's rights by the defendant, the plaintiff may not assert the third party's rights as the basis of his cause of action.

■ These prudential limitations reflect the Court's concern with managing its case load and ensuring that abstract questions are not brought before the courts: they are matters of judicial self-governance. Two exceptions have evolved. First, a plaintiff may assert the rights of a third party as the basis of his cause of action if there is a relationship between the third party and the plaintiff which has been adversely affected by the defendant's conduct. *See e. g., Sullivan v. Little Hunting Park, supra.* Second, Congress may grant standing to a class of plaintiffs to assert the rights of third parties. *Warth* at 501, 95 S.Ct. at 2206. *See, Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (Fair Housing Act).

■ Although at first blush it may appear that the developers, who are not members of a minority, cannot assert their own rights under § 1981 and § 1982, the caselaw which has developed in recent years establishes conclusively that racial discrimination motivated by anti-black feeling but directed against whites is actionable. The seminal case is *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), where a white citizen (Sullivan) successfully sued the subdivision which had expelled him for advocating to the executive board the right of a black to purchase his house. Sullivan obtained a damage award. In *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306 (2d Cir. 1975), the white plaintiff successfully maintained a damage action against his former employer who discharged him for selling his home to a black fellow employee. The Fifth Circuit, in *Faraca v. Clements,* 506 F.2d 956 (5th Cir. 1975) provided a damage remedy to a white plaintiff who was refused employment by the defendant because the plaintiff was married to a black woman.

In *Riccobono v. Whitpain Tp.,* 497 F.Supp. 1364 (E.D.Pa.1980), the Court permitted a developer of a roller skating rink to maintain an action under §§ 1981 and 1982 against the defendants who denied the permit because, allegedly, the defendants feared that the facility would attract minority customers.

In each of those cases, the defendant made an illegal, racially motivated decision —i. e. a decision motivated by an anti-minority prejudice—which had its primary impact on a white. Standing to seek damages was granted in each case. They are not isolated cases. *See, Spiess v. C. ITOH & Co.,* 408 F.Supp. 916, 927 (S.D.Tex.1976) (dictum); *National Org'n For Women v. Sperry Rand Corp.,* 457 F.Supp. 1338, 1346–47 (D.Conn.1978); *Valle v. Stengel,* 176 F.2d 697, 702 (3rd Cir. 1949); *Walker v. Pointer,* 304 F.Supp. 56, 60 (N.D.Tex.1969); *Lamb v. Sallee,* 417 F.Supp. 282, 286 (E.D.Ky.1976); *Bishop v. Pecsok,* 431 F.Supp. 34, 37 (N.D. Ohio 1976); *Cubas v. Rapid Am. Corp., Inc.,*

420 F.Supp. 663, 666 (E.D.Pa.1976); *Liotta v. National Forge Co.*, 473 F.Supp. 1139 (W.D.Pa.1979); *Crawford v. Roadway Exp., Inc.*, 485 F.Supp. 914 (W.D.La.1980); *Ragheb v. Blue Cross & Blue Shield of Michigan*, 467 F.Supp. 94 (E.D.Mich.1979); *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977). In each of these cases, the plaintiff, seeking damages, had standing under § 1981 or § 1982 to recover against a defendant whose racially motivated conduct injured the non-minority plaintiff.

■ There is no requirement that a minority suffer injury before the white plaintiff may recover. In *DeMatteis, supra*, for example, the only minority involved in the facts of the case was the purchaser of the white plaintiff's home. In *Walker v. Pointer, supra*, the white tenants were evicted for entertaining black guests: the blacks suffered no injury. The Court wrote, "the plaintiffs are within the jurisdictional scope of section 1982 in their own right—even though they are not Negro persons and irrespective of whatever harm might have befallen Negro persons as a result of the alleged interruption of the Walker leasehold by defendants." *id.* at 60.

In each of the above-cited cases, the non-minority plaintiff was asserting *his own right to be free from injury generated by the defendant's racially motivated conduct.* Moreover, as the Court in *Riccobono, supra*, recognized, the defendants' alleged discriminatory conduct was really directed at an as yet unidentifiable group of people, i. e., blacks who might become tenants of the housing. The developers are the only effective adversaries in this case. *Riccobono, supra*, at 1373; *Sullivan, supra*, 396 U.S. at 237, 90 S.Ct. at 404; *Barrows, supra*, 346 U.S. at 259, 73 S.Ct. at 1036.

*Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), does not conflict with these decisions. In *Warth* there were a number of plaintiffs challenging the town of Penfield's zoning policies which effectively excluded persons of low and moderate income from living in the town. One group of plaintiffs consisted of residents of Rochester who claimed that they desired to live in Penfield. The Court held that they failed to demonstrate any injury: "none of these petitioners has a present interest in any Penfield property; none is himself subject to the ordinance's strictures; and none has ever been denied a variance or permit by respondent officials." *Warth*, at 504, 95 S.Ct. at 2208. Another group of plaintiffs consisted of residents of Rochester who claimed they suffered economic injury as a result of Penfield's policies: "Petitioners do not, even if they could, assert any personal right under the Constitution or any statute to be free of action by a neighboring municipality that may have some incidental adverse effect on Rochester." *Warth*, at 509, 95 S.Ct. at 2210. The three other plaintiffs were denied standing on the grounds that they failed to allege any injury.

■ The developers here, in contrast, have alleged that they have an interest in the property, and that the defendants have denied their permit application for illegal reasons. The plaintiff has suffered economic injury. There can be no question, therefore, that the partnership has standing to seek damages against the defendants.

In *United States General, Inc. v. City of Joliet*, 432 F.Supp. 346 (N.D.Ill.1977), the Court denied standing to the plaintiff on the grounds that the failure to seek equitable relief deprived the plaintiff of the necessary relationship to the minorities whose rights were being asserted by the plaintiff. That is, because only damages were sought, if the plaintiff prevailed, no benefit would flow to any minority victim of discrimination. However, this analysis is flawed. It is premised on the theory that the plaintiff was asserting the rights of minorities to support its claim for relief. But the plaintiff is not championing the rights of minorities. The plaintiff has a right to be free from racially motivated governmental decisions, and it is this right which supports the cause of action. "[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v.*

*Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The plaintiffs' injuries can be redressed by an award of damages.

## II § 1983 [3]

■ The Fourteenth Amendment guarantees that no person shall be deprived of property without due process of law. The partnership in this case had an interest in the property which it sought to develop.

Few principles of law are more firmly stitched into our constitutional fabric than the proposition that a State must not discriminate against a person because of his race or the race of his companions, or in any way to compel or encourage racial segregation. *Adickes v. Kress & Co.*, 398 U.S. 144, 151–152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Therefore a State may not punish a non-white for having social contacts with a black. Ibid. Likewise it may not through one of its creatures, punish or discriminate against a corporation for its willingness, past or present, to make contracts with blacks. And if it does so, then the person so punished or discriminated against has a § 1983 right of action.

*Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 17 (1st Cir. 1979). *See also, Crow v. Brown*, 457 F.2d 788 (5th Cir. 1972) *aff'g* 332 F.Supp. 382, 384 (N.D.Ga.1971). In *Construction Ind. Ass'n, Sonoma City v. City of Petaluma*, 522 F.2d 897 (9th Cir. 1975), the defendant municipality adopted a plan which limited the growth of the city by restricting housing starts. An association of builders and a group of landowners challenged the plan. They asserted the rights of third parties—not before the court—to be free of unwarranted restrictions on their right to travel or migrate. The Court denied the plaintiff's standing to assert the rights of those people. The Court continued,

Although we conclude that appellees lack standing to assert the rights of third parties, they nonetheless [have] standing to maintain claims based on violations of rights personal to them. Accordingly, appellees have standing to challenge the Petaluma Plan on the grounds asserted in their complaint that the Plan is arbitrary and thus violative of their due process rights guaranteed by the Fourteenth Amendment . . .

*id.* at 905.

In *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980), a developer and an architect sued under § 1983, claiming that the defendant public officials had rezoned land from multi-family to single family and duplex in order to assure that no low income housing could be built. Ultimately, the district court, with the Eighth Circuit affirming, dismissed the complaint on the grounds that zoning was a legislative matter. Therefore, the public officials were immune from a civil rights suit. However, before reaching the issue of immunity, the court first considered the threshold question of whether the developer and architect had standing under § 1983:

Reading the complaint liberally and taking its allegations as true, it is apparent that the city directors' rezoning was without rational basis and therefore deprived appellants of property without the due process or equal protection guaranteed them by the Fourteenth Amendment. . . . Appellants' claim thus falls within the expansive wording of 42 U.S.C. § 1983, which affords a damage remedy against 'every person' who, under color of state law, deprives another of constitutional rights.

*id.* at 611. *See also, Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928); *Agins v.*

---

**3.** 42 U.S.C. § 1983 provides,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Therefore, the developer has standing to assert his personal rights.

### III THE FAIR HOUSING ACT

Under 42 U.S.C. § 3612, a complaint must be filed within 180 days of the alleged act of discrimination. With respect to the defendants' conduct prior to September 27, 1980, any claim is time-barred.

The defendants have not seriously contested the plaintiff's standing under the Fair Housing Act. The decisions in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) and *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) held that a plaintiff proceeding under that Act proceeds unencumbered by any prudential limitations on standing. Injury in fact is the sole criterion to assert standing.

### IV OTHER MATTERS

The Fifth Circuit has recently decided that local legislators are entitled to absolute immunity from suit under § 1983. *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981). Although the questions of qualified immunity had been argued by the defendants in an earlier brief, neither party has addressed the *Hernandez* decision. Because there are a number of defendants with different official positions and duties, the Court will defer deciding this issue until additional briefs are submitted.

Defendants contest the standing of Ms. Ruby A. Wilson, a black resident of Bartow County, who was on the waiting list for the low-income housing. Defendants contend that there is no Constitutional guarantee of access to dwellings of a particular quality, and thus she has suffered no cognizable injury. However, Ms. Wilson's standing emanates from her being the victim of racial discrimination, not from her being denied suitable housing. *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida,* 493 F.2d 799, 808 (5th Cir. 1974).

The defendants cite *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* —— U.S. ——, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) for the proposition that the Fair Housing Act effectively supplants § 1983 suits in the field of housing discrimination. This attributes too much to *Middlesex County.* That case simply held that a Water Pollution and a Marine Protection Act were sufficiently comprehensive as to evidence Congressional intent to exclude § 1983 suits premised on a violation of those acts. In this case, however, § 1983 is the vehicle employed to seek redress of Constitutional violations. Certainly the Fair Housing Act does not supplant the Fourteenth Amendment. Furthermore, §§ 1981 and 1982 confer specific rights on persons who have been damaged by racially motivated conduct. The Fair Housing Act did not supercede those provisions.

In conclusion, the plaintiffs have standing under §§ 1981, 1982 and 1983 to seek redress for the allegedly illegally motivated decisions of the defendants. The parties are granted two weeks to submit additional briefs on the impact of the *Hernandez* decision. The parties are also requested to address the effect of the *Hernandez* decision on plaintiff's § 1985 claim.

ACCORDINGLY, defendants' motion to dismiss is DENIED.