Tom WINSTON, Plaintiff,

and

Russ Leone, Plaintiff-Appellant,

v.

LEAR–SIEGLER, INC., a corporation, Defendant-Appellee.

No. 76–2162.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1977.

Decided July 21, 1977.

Nicholas J. Rine, Richard L. Steinberg, Philo, Cockrel, Spearman, Cooper, Rine, King & Atkinson, Detroit, Mich., for plaintiff-appellant.

Anthony A. Haisch, Detroit, Mich., for defendant-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by Russ Leone, appellant, from an order in the United States District Court for the Eastern District of Michigan, Southern Division, dismissing his complaint in an action brought under Section 1981, Title 42 U.S.C. for violation of his civil rights and for damages resulting therefrom and for other relief.

1. First enacted as part of the Civil Rights Act of 1866, it was reenacted with some changes in 1870 and codified in 1874. *See Jones v. Alfred*

The appellant and one Tom Winston, a fellow employee, as joint plaintiffs filed a complaint against their employer, Lear-Siegler, Inc., a corporation, appellee herein. They sought declaratory, injunctive, monetary and other appropriate relief to redress the deprivation of their rights and privileges guaranteed by Sec. 1981, Title 42 U.S.C. Jurisdiction was conferred under 28 U.S.C. § 1343(4) and 28 U.S.C. § 2201.

The plaintiffs, Tom Winston, a black American and Russ Leone, a white American, had been employed by the defendant corporation as tool and die makers from May 20, 1975 to August 19, 1975. The employment of both plaintiffs was terminated by the defendant corporation on August 19, 1975. It is alleged that the disciplinary action taken against black Tom Winston would not have been taken against white employees similarly situated and for the same or similar conduct. The disciplinary action taken against white Russ Leone was because he protested and objected to the racially discriminatory action taken against Tom Winston.

The defendant, appellee, moved to dismiss the complaint as to the appellant Russ Leone. Upon oral presentation of the Motion, the District Judge, in a ruling from the Bench, sustained the Motion and entered final judgment dismissing the complaint of the appellant. He appeals.

Section 1981, Title 42 U.S.C.,[1] under which this action is predicated, reads as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

*H. Mayer Co.*, 392 U.S. 409, 422 n. 28, 88 S.Ct. 2186, 20 L.Ed.2d 1189.

The District Judge, in sustaining the Motion, gave his reasons as follows:

"I am going to rule, first of all, that 1981 does not apply to the language by white persons for discrimination, but even more importantly than that, this particular claim—if I am wrong on that score—more importantly than that, this particular claim is not couched in terms of the wrong being done by or due to a claim of race. This is a wrong that's alleged to be done as a result of protesting of a firing of some kind and, therefore, it does not fall within the terms of 1981."

■ It is conceded by the appellee that the first ground of the District Judge's decision is in error. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493. It is stated in *McDonald*, 295, 96 S.Ct. 2585,

"This cumulative evidence of congressional intent makes clear, * * * that the 1866 statute, designed to protect the 'same right * * * to make and enforce contracts' of 'citizens of every race and color' was not * * * intended * * * to the protection solely of non whites. Rather the Act was meant by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."

Thus, the conclusion of the District Judge "that 1981 does not apply to the language by white persons for discrimination" cannot stand.

His alternative basis for dismissing the action—"that this particular claim is not couched in terms of the wrong being done by or due to a claim of race."—must be examined.

The question then, is whether 42 U.S.C. Section 1981 provides a cause of action to a White Party against a Private Employer who allegedly fired the White Party for protesting an asserted racially motivated firing of a Non-White Party.

■ In considering this question, the material facts alleged in the complaint must be taken as true since the action was dismissed at the pleading stage. *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338. Furthermore, "the fact that this action was brought under one of the civil rights statutes requires us to scrutinize such a dismissal with special care." *Lucarell v. McNair*, 453 F.2d 836, 839 (See also note 1) (6th Cir. 1972):

Section 1981 has been held to afford a federal remedy against discrimination on the basis of race in private employment contracts. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–460, 95 S.Ct. 1716, 44 L.Ed.2d 295.

In *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974), Long, a black employee was forced to resign due to a conflict with his employer over the character of his work. The Court held that the employer did not state a cause of action under 42 U.S.C. Section 1981. The Court said, 505,

"A person alleging a Section 1981 violation must first establish that his employment terms vary from those which his employer accords to similarly situated white workers."

Here there was no comparison with any other co-worker and no allegation in the complaint that he was not accorded the same treatment as similarly situated white workers.

We conclude that this case is not in point in the case now before us. While the appellant was not fired because of his race, it was a racial situation in which he became involved that resulted in his discharge from his employment.

■ We have found only one Circuit Court to have addressed the issue, now before us, in a reported decision. In *DeMatteis v. Eastman Kodak Co.*,[2] 511 F.2d 306 (2d Cir. 1975), modified 520 F.2d 409, a white plaintiff alleged he had been forced into premature retirement by his employer solely because he had sold his house, located

---

2. See also *Faraca v. Clements*, 5 Cir., 506 F.2d 956 (1975), cert. den. 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975).

in a neighborhood inhabited primarily by white Kodak employees, to a black fellow-employee. From an order, inter alia, dismissing his claim for lack of standing under 42 U.S.C. Section 1981, plaintiff appealed. With respect to this issue, the appellate court stated,

"The district court dismissed the claim on the ground that a white person does not have standing to sue under that section of the Civil Rights Act. The Supreme Court has held, however, in *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400 * * * that a white person who has been ' * * * punished for trying to vindicate the rights of (non-white) minorities * * * ' has standing to sue under § 1981." Id. at 312.

*Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), simply does not make the specific finding attributed to it in *DeMatteis*. In *Sullivan*, a non-stock corporation was organized to operate a community park and playground facility for the benefit of area residents. A person owning a membership share was entitled, when he rented his home, to assign the share to his tenant, subject to approval of the Board of Directors. A white, home-owner-member bought another house in the area and leased the first one to a black, to whom he also assigned his membership share. When the Board refused to approve the assignment, because the lessee was black, the white lessor protested and was expelled from the corporation by the Board. The lessor and lessee thereafter sued under 42 U.S.C. §§ 1981, 1982 for injunctions and monetary damages. Although the suit was filed pursuant to both Sections 1981 and 1982, the Supreme Court referred explicitly only to Section 1982 in setting out the rationale for its holding that the plaintiff had standing to maintain the action.

Reference to the opinion of the Supreme Court in *Sullivan v. Little Hunting Park*, however, reveals the Supreme Court made no blanket assertion,

"that a white person who has been ' * * punished for trying to vindicate the rights of (non-white) minorities * * ' has standing to sue under Section 1981."

Rather, the Court stated,

"We turn to Sullivan's expulsion for the advocacy of Freeman's cause. If that sanction, backed by a state court judgment, can be imposed, then Sullivan is punished for trying to vindicate the rights of minorities protected by § 1982. Such a sanction would give impetus to the perpetuation of racial restrictions on property. That is why we said in *Barrows v. Jackson*, 346 U.S. 249, 259, 73 S.Ct. 1031, 1036, 97 L.Ed. 1536 * * * that the white owner is at times 'the only effective adversary' of the unlawful restrictive covenant. Under the terms of our decision in *Barrows*, there can be no question but that Sullivan has standing to maintain this action." *Sullivan, supra*, at 237, 90 S.Ct. at 404.

The Court in *DeMatteis*, therefore, could only have assumed that, since plaintiffs in *Sullivan* filed their action pursuant to both Sections 1981 and 1982, the Supreme Court did not limit its reasoning on the standing issue to 42 U.S.C. § 1982. A careful reading of the opinion, however, reveals no specific application by the Court of its "standing" finding to 42 U.S.C. § 1981. In fact, the holding of the Court is interpreted by the three members of the court dissenting to the majority opinion to be "that a white person who is expelled from a recreation association 'for the advocacy of (a negro's) cause' has 'standing' to maintain an action for relief under § 1982." *Sullivan, supra*, at 241, 90 S.Ct. at 407.

Nevertheless, the fact remains that at least one Circuit has interpreted the decision to clothe white persons with standing to sue their employer for relief from measures taken against them in retaliation for their having sold property to a black. *DeMatteis v. Eastman Kodak Co., supra*. Moreover, at least one District Court, in reliance upon *DeMatteis*, has concluded that a party can sue a former employer under 42 U.S.C. § 1981, when the employer discharged her in retaliation for her activities on behalf of a dissident faction within a union which concerned itself with the griev-

ances of non-white (Cuban) minority group workers. *Cubas v. Rapid American Corp., Inc.*, 420 F.Supp. 663 (E.D.Pa.1976).

It is difficult to see any reason why the Supreme Court would interpret the language of Section 1981 differently from the manner in which the Court interpreted Section 1982 to allow an expelled white member of a community recreational corporation to sue that corporation for expelling him in retaliation for his advocating the cause of a black seeking membership in the corporation.

As stated previously, 42 U.S.C. § 1981 provides,

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other."

42 U.S.C. § 1982 provides,

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Thus, just as 42 U.S.C. § 1981 requires that all citizens have an equal right to contract, 42 U.S.C. § 1982 mandates that all citizens have an equal right to hold and convey property. Both statutes, originally enacted as part of the Civil Rights Act of 1866, were intended to uproot the institution of slavery and to eradicate its badges and incidents. See *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 422–437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Tillman v. Wheaton-Haven Recreation Assn.*, 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). And this identity of historical source and similarity of language and intent are particularly significant in view of the statement of the Supreme Court in *Sullivan v. Little Hunting Park, supra*, that

"A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by Section 1 of the Civil Rights Act of 1866 . . . from which § 1982 was derived." Id. 396 U.S. at 237, 90 S.Ct. at 404.

In *Barrows, supra*, plaintiffs sued a caucasian for damages allegedly resulting from the caucasian's selling property to a black in violation of racially restrictive covenant. The Court held that the defendant seller had standing to assert the constitutional rights of the black purchaser who was not made a party to the suit as a defense to the damage action against him. This holding was based upon the Court's conclusion that defendant "is the only effective adversary of the unworthy covenant in its last stand." 346 U.S. at 259, 73 S.Ct. at 1036.

In conclusion, the issue of whether or not the white plaintiff in this action has standing to sue his former employer under 42 U.S.C. § 1981 for discharging him in alleged retaliation for plaintiff's protesting the alleged discriminatory firing of a black coworker is one of first impression in this Circuit. The only other Circuit having reportedly addressed the issue has resolved it in the affirmative. *DeMatteis v. Eastman Kodak Co., supra*. *DeMatteis* reached its conclusion based upon its understanding of the Supreme Court's decision in *Sullivan v. Little Hunting Park* to be " . . . that a white person who has been . . . 'punished for trying to vindicate the rights of (non-white) minorities . . .' has standing to sue under § 1981." *DeMatteis, supra*, at 312. While the Supreme Court only specifically addressed this issue with respect to Section 1982, the plaintiff in *Sullivan* did file his action pursuant to Section 1981 as well as Section 1982. Moreover, in view of both Sections 1981 and 1982 being derived from the Civil Rights Act of 1866 and in view of the similarity in language and intent, no reason is seen not to apply the rationale of *Sullivan* in interpreting Section 1981.

The judgment of the District Court is REVERSED and the case remanded with instructions to reinstate the complaint of the appellant in accordance with this opinion.