Victor **RICCOBONO**

v.

**WHITPAIN TOWNSHIP et al.**

Civ. A. No. 80–175.

United States District Court,
E. D. Pennsylvania.

Sept. 30, 1980.

Thomas C. Branca, Branca & Ghen, Gregory S. Ghen, Lansdale, Pa., for plaintiff.

Joseph Goldberg, Margolis, Edelstein & Scherlis, Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This case arose out of a controversy surrounding the proposed construction of a roller rink by plaintiff Victor Riccobono on property he owns in the Blue Bell area of Whitpain Township (the "Township"). Plaintiff has sued the Township, various Township officials, two private civic associations and certain of the associations' mem-

bers for alleged violations of his civil rights.[1]

Now before the Court is the defendants' motion to dismiss the amended complaint[2] on the grounds that the Court lacks subject matter jurisdiction, the complaint fails to state a claim upon which relief can be granted and the applicable statute of limitations bars the action. For the reasons discussed in this memorandum, we will grant this motion in part and will deny it in part.

According to the complaint, since 1977 plaintiff has been ready and willing to build an indoor roller skating rink on the property he owns in the Township. Because plaintiff's property is located in a C–Commercial Zoning District, it was not necessary that he obtain a zoning change to begin construction of the rink. In compliance with requirements of the Township's zoning ordinances, Mr. Riccobono allegedly submitted plans for the proposed rink to the Township's Planning Commission in order to obtain the necessary building permit. The complaint states that even though the Montgomery County Planning Commission recommended approving plaintiff's application and the Township Engineer found that the application met all zoning, land development and subdivision requirements, the Township Planning Commission recommended to the Township's Board of Supervisors that plaintiff's application be denied.

It is further alleged that during a meeting of the Township Planning Commission in which his application for a building permit was discussed, plaintiff and his attorney were harassed and physically threatened by certain members of the defendant Blue Bell Area Taxpayers Association and Five Point Civic Association. Thereafter, according to the complaint, members of the Township's Planning Commission, its Board of Supervisors and Sewer Authority acted to thwart Mr. Riccobono's efforts to acquire the necessary building permit because they believed that the roller rink would attract black people into the Blue Bell area of the Township. According to the plaintiff, defendant DeVincent, a member of the Township Board of Supervisors, told him that his roller skating rink would never be approved because the Township wanted to avoid racial integration and the vandalism which would supposedly result from it.

In purported violation of the Pennsylvania "Sunshine Law", the Township's Board of Supervisors met in a closed door session and decided to "table" plaintiff's application. As a result of this action, it is alleged, plaintiff sought a mandamus in the Court of Common Pleas of Montgomery County. Although the parties to that action entered into an Agreed Order (consent decree), plaintiff contends that the defendants continued to block his efforts to complete the necessary prerequisites to obtaining the building permit.[3] According to the com-

---

1. The parties named in the amended complaint are as follows: Whitpain Township, Max Tietjens (Township Zoning Officer), Thomas A. Ainsworth (former member, Board of Supervisors), Anthony J. DeVincent (member, Board of Supervisors), William Lechler (member, Board of Supervisors), Robert Krum (former member, Board of Supervisors), Marc B. Kaplin (Township Solicitor), Graham Swift (member, Sewer Authority), Evelyn Wilson (member, Planning Commission), Robert Whann (member, Planning Commission), Whitpain Township Sewer Authority, John and Lauranne Richwagon (members of the Blue Bell Area Taxpayers Association), Len Steiner (member of Blue Bell Area Taxpayers Association), Blue Bell Taxpayers Association, Five Point Civic Association, John J. Lombard, Jr. (member, Planning Commission), Albert DeMore (member, Planning Commission), William Dewald (member,

Planning Commission), and Anthony Greco (member, Planning Commission).

2. Hereinafter, we will refer to the amended complaint simply as the complaint.

3. According to the complaint, the Agreed Order provided as follows: (1) that a roller skating facility is a permitted use under Section 700(j) of the Whitpain Township Zoning Ordinance; (2) that the plaintiff is required to file an application for a building permit; (3) that the plaintiff is required to obtain a sewer connection permit; (4) that the Board shall conduct a public meeting within twenty (20) days after the filing of the application for the building permit and the delivery of the sewer connection permit; (5) that the Board shall deliver a decision within ten (10) days of the public meeting; and (6) that plaintiff should not have to further submit his plans to the Board for review.

plaint, defendants prevented plaintiff from getting the necessary sewer permits for over three months. These permits were issued only after plaintiff returned to Common Pleas Court and acquired a court order.

In September of 1978, the Township Board of Supervisors formally rejected plaintiff's application to build the roller rink. On appeal to the Court of Common Pleas, plaintiff succeeded in having the decision reversed. Judge Horace A. Davenport found the Supervisors' decision to be without basis in law or fact and directed the Board of Supervisors to issue the appropriate permits to Mr. Riccobono. Affirming the order and opinion of Judge Davenport, the Commonwealth Court dismissed the Township's appeal.

The defendants have made numerous arguments in support of their motion to dismiss, and we will address each of them in the following discussion.

## I. EXISTENCE OF A SUBSTANTIAL CONSTITUTIONAL QUESTION.

Defendants urge that the Court lacks subject matter jurisdiction over this matter because plaintiff has failed to raise a substantial constitutional question. In support of this argument, defendants characterize the present suit as an effort to obtain "leverage" to pressure Whitpain Township into acceding to the demands of plaintiff and as an attempt to "chill" the legislative process of the Township and the participation by the citizen groups in that process.

Plaintiff has invoked the jurisdiction of this Court under 28 U.S.C. § 1343. It is settled that in order to confer jurisdiction upon a district court under §§ 1343(3) and (4) a constitutional claim must not be "wholly insubstantial" or "obviously frivolous". The Supreme Court has noted:

> The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that

claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial ... *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1974).[4]

■ Applying this test to the allegations of this complaint, we find that plaintiff has stated constitutional claims substantial enough to confer § 1343 jurisdiction upon this Court. The gravamen of the complaint is that in an effort to keep black people out of the Blue Bell area of Whitpain Township, defendants, acting arbitrarily and capriciously and under color of state law, denied plaintiff's right to enjoy, use and dispose of his property. On its face this claim of constitutional deprivation is substantial and clearly not frivolous. Moreover, defendants have not cited, nor do we know of any decisions of either the Supreme Court or the Third Circuit Court of Appeals which would suggest that such a claim is frivolous or of doubtful merit. Accordingly, we reject defendants' argument that this Court lacks subject matter jurisdiction over this case because of the insubstantiality of plaintiff's constitutional claims.

## II. THE PRIVATE DEFENDANTS' LIABILITY UNDER 42 U.S.C. § 1983.

■ Defendants urge the Court to dismiss the complaint as to the private defendants, that is, the Blue Bell Area Taxpayers Association, the Five Point Civic Association and certain individuals who are members of these groups. As defendants correctly observe, in order to recover under 42 U.S.C. § 1983, a plaintiff must prove that the defendant has deprived him of a right secured by the federal constitution or by federal law and that the defendant so acted under "color of state law." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Given the requirement of an act done under color of state law, private or nongovernmental parties usually are not liable under § 1983.

---

**4.** *See also Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

There are cases, however, which hold that private parties who have conspired with governmental officials to deprive another of his rights under federal law can be sued under 42 U.S.C. § 1983. *See, e. g. Adickes v. S.H. Kress and Company*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 983 (5th Cir. 1979).

■ Plaintiff has alleged that the private defendants conspired with various officials of Whitpain Township, for the purpose of excluding black people from the Blue Bell area of the Township, to deprive plaintiff of his rights to enjoy, use and dispose of his property. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, we will not dismiss the complaint as it regards the private defendants.

## III. PLAINTIFF'S STANDING TO BRING THIS SUIT.

■ The third basis for dismissal raised by defendants is that plaintiff lacks standing to bring this suit because he is not the actual owner of the property involved, and thus, he has not suffered any threatened or actual injury as a result of the alleged illegal action. This argument is without merit. In paragraph one of the amended complaint, plaintiff states that he is the equitable owner of the land in question, and a copy of the sales agreement for his purchase of the property is attached to the complaint as Exhibit "R".

■ For purposes of ruling on a motion to dismiss for lack of standing, we must accept as true all material allegations and construe the complaint in favor of the plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Under the terms of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10101 *et seq.* a "landowner" is defined as:

> ... the legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition) ... 53 P.S. § 10107(12).

In addition, under Pennsylvania case law an equitable owner of real property, such as the plaintiff in this case, qualifies as a real party in interest who may sue to protect his rights in the property. *See, e. g., National Land and Investment Company v. Kohn*, 419 Pa. 504, 215 A.2d 597 (1966).

## IV. PLAINTIFF'S CAUSES OF ACTION UNDER 42 U.S.C. §§ 1985 AND 1986.

Defendants further argue that plaintiff has failed to state a cause of action under sections 1985 and 1986 because 1) "the broad and conclusory statements" of the complaint are not supported by the factual allegations; 2) the only conspiracy alleged is between a township supervisor and other township officials; and 3) there is no allegation that defendants acted outside the normal course of their official duties. We find defendants' characterization of plaintiff's § 1985 claims to be inaccurate.

■ Plaintiff has stated claims under 42 U.S.C. § 1985(3) in two counts of the complaint. Count III alleges that the private defendants conspired with various officials of Whitpain Township to deprive plaintiff of the use of his property; the purpose of this conspiracy was to prevent black people from patronizing businesses in the Township or visiting or residing there. Count VII alleges that these defendants, private individuals and public officials alike, conspired to deprive plaintiff of his rights under the equal protection clause of the Fourteenth Amendment by acting to favor the interests of other property owners in the Blue Bell area of Whitpain Township over the interest of plaintiff. It is clear that, contrary to the assertions of defendants in the motion to dismiss, the complaint does provide sufficient factual allegations to support the claim of a § 1985 conspiracy, that it alleges a conspiracy among members of organizations of private citizens and various Township officials and that it charges the defendant officials with acting outside the scope of their employment.

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court found that § 1985(3) provided a cause of action for damages arising out of private conspiracies as well as conspiracies carried out "under color of state law." However, the Court in *Griffin* also found that in order to state a § 1985(3) claim there must be some racial or otherwise class–based "invidiously discriminatory animus" underlying the conspiracy. In addition, the *Griffin* court held that in order to state a cause of action under § 1985(3), the complaint must allege the following: a conspiracy among the defendants for the purpose of depriving a person or class of persons of equal protection of the laws or of equal privileges and immunities under the law, and an act in furtherance of the conspiracy whereby another was either injured in his person or property or deprived of a right or privilege as an United States citizen. 403 U.S. at 102–03, 91 S.Ct. at 1790.

We believe that the complaint meets all the requirements set forth in *Griffin, supra* for stating a claim under 42 U.S.C. § 1985(3). As we have already noted, Mr. Riccobono alleges that the defendants conspired among themselves to prevent him from building a roller rink on property of which he was the equitable owner, and the purpose of this conspiracy was purportedly to keep black people out of the Blue Bell area of Whitpain Township. Moreover, the complaint sets forth with sufficient specificity factual allegations which support this charge of a conspiracy. Accordingly, we deny defendants' request for a dismissal of the § 1985(3) claims of plaintiff.

The sole argument advanced by defendants in support of the dismissal of plaintiff's cause of action under 42 U.S.C. § 1986 is that the claim must fall perforce as plaintiff has failed to state a claim under § 1985. Although it is true that there cannot be recovery under § 1986 unless a violation of § 1985 has been established,[5] defendants cannot prevail on this argument because we have found that plaintiff has stated claims under § 1985(3). Nonetheless, we will dismiss the § 1986 claim without prejudice and grant the plaintiff leave to amend the complaint.

Section 1986 states in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented

. . .

As the complaint now reads, it is unclear which of the defendants are alleged to have had knowledge of a § 1985(3) conspiracy against plaintiff, had the power to prevent its commission, and failed to do so. The attached order grants plaintiff the right to amend his complaint to attempt to state a cause of action under 42 U.S.C. § 1986.

## V. PLAINTIFF'S CAUSES OF ACTION UNDER 42 U.S.C. §§ 1981 and 1982.

Defendants argue that plaintiff's claims under 42 U.S.C. §§ 1981 and 1982 should be dismissed because he lacks standing to sue under these statutes. As defendants point out, sections 1981 and 1982 are directed solely at discriminatory conduct based on race. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Jones v. Alfred H. Mayer, Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968).[6] Defendants

---

5. *See, e. g., Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976).

6. Sections 1981 and 1982 were originally provisions of the Civil Rights Act of 1866. 42 U.S.C. § 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws or proceedings for the security of persons and property as is enjoyed by white

contend that to have standing to bring an action under either § 1981 or § 1982 one must be a member of the racial group which is the object of the defendants' alleged discriminatory conduct. Since the instant complaint alleges racial discrimination against blacks and plaintiff is white, defendants urge that the §§ 1981 and 1982 claims be dismissed.

There are, however, a number of cases which hold that a person may sue under either § 1981 or § 1982 for injuries suffered as the result of discriminatory conduct directed against a racial group of which he is not a member. For example, in the case of *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the Supreme Court held that a white plaintiff had standing to bring an action under 42 U.S.C. § 1982 for the injuries he suffered while attempting to vindicate the rights of a black citizen. Mr. Sullivan, a white, leased his home in Fairfax County, Virginia, to a black man named Freeman. Sullivan was a member of defendant Little Hunting Park, Inc., a corporation which operated a community park and playground. Under the bylaws of Little Hunting Park, a member who rented his house was entitled to assign his membership share to his tenant. The board of Little Hunting Park not only refused to accept Sullivan's assignment of his membership to Mr. Freeman, they also expelled Sullivan from the corporation. Both Freeman and Sullivan brought suit against Little Hunting Park. Holding that Sullivan could seek relief under § 1982 even though the discriminatory conduct in question was directed at black people, the Supreme Court observed:

> We turn to Sullivan's expulsion for the advocacy of Freeman's cause. If that sanction, backed by a state court judgment, can be imposed, then Sullivan is punished for trying to vindicate the rights of minorities protected by § 1982. Such a sanction would give impetus to the perpetuation of racial restrictions on property. That is why we said in *Barrows v. Jackson* [346 U.S. 249, 259, 73 S.Ct. 1031, 1036, 97 L.Ed. 1586] that the white owner is at times 'the only effective adversary' of the unlawful restrictive covenant. Under the terms of our decision in *Barrows*, there can be no question but that Sullivan has standing to maintain this action. 396 U.S. at 237, 90 S.Ct. at 404. (citations omitted).

Also, in a recent case factually very similar to the one now before the Court, the Second Circuit found that a land development corporation had standing to sue under 42 U.S.C. § 1981 even though as a corporation it had no racial identity and could not be the direct target of racial discrimination. In *Des Vergnes v. Seekonk Water District*, 601 F.2d 9 (2d Cir. 1979), Heritage Homes of Attleboro, Inc., a low–income housing developer, and its president filed a civil rights action against Seekonk Water District. Plaintiffs alleged that the defendant water district denied Heritage Homes' petition to have its real estate included within the water district because many members of the district believed that Heritage Homes planned to build federally subsidized low–income housing on the property, thus attracting low–income and minority people into the area. In its *Des Vergnes* decision, the Second Circuit opined:

> From *Sullivan* and from cognate cases under § 1981 we conclude that, in order to effectuate the public policy embodied in § 1981, and in order to protect the *legal rights* of non–whites expressly created by § 1981, a person has an implied *right of action* against any other person who, with a racially discriminatory intent, interferes with his right to make contracts with non–whites. *A fortiori* a person has an implied *right of action* against any other person who, with a racially discriminatory intent, injures him

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1982 states:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.

because he made contracts with non—whites. 601 F.2d at 14. (emphasis in the original).[7]

The instant complaint alleges that the defendants attempted to prevent Mr. Riccobono from obtaining the building and sewer permits which were prerequisites to his construction of a roller rink solely because they feared that the rink would bring blacks into their community. As already noted, for purposes of ruling on a motion to dismiss for lack of standing, we must accept as true all material allegations and construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). In this case, as in *Sullivan* and *Des Vergnes*, the plaintiff, should his allegations be proved, was injured because defendants believed that he was willing to contract and do business with members of minority groups. Moreover, since the defendants' alleged discriminatory conduct was really directed at an as yet unidentifiable group of people, e. g., blacks who might patronize the proposed roller rink, Mr. Riccobono is the only effective adversary in this case. Therefore, we will not dismiss plaintiff's claims under 42 U.S.C. §§ 1981 and 1982.

## VI. THE APPLICABILITY OF THE DOCTRINE OF ABSTENTION.

Defendants invoke the doctrine of abstention as another ground for dismissal of the instant case. Their argument is that we should abstain from assuming jurisdiction over this matter in order to prevent unnecessary federal interference in state and municipal operations. Because decisions made by municipal officials regarding zoning and land use matters are at issue in this case, defendants maintain that plaintiff must pursue his remedies through the state court process.

■ Given the facts of this case, however, defendants' abstention argument cannot prevail. It is true that under Pennsylvania law, a party such as a plaintiff, who wishes to overturn the denial of his application under a municipal zoning ordinance, must pursue the remedy provided by the Municipalities Planning Code, 53 P.S. 11006. That remedy is an appeal to state court. Plaintiff in this case did follow that course and successfully appealed to the Court of Common Pleas of Montgomery County the rejection of his application for a building permit by the Whitpain Township Board of Supervisors. In turn, the Township appealed the court's reversal of the Township's denial of a building permit. The Commonwealth Court affirmed the order of Judge Davenport. The Township, however, did not pursue an appeal to the Pennsylvania Supreme Court. Thus, the remedies available under the Municipalities Planning Code have been exhausted in this case. In the matter now before the Court, plaintiff does not seek relief from defendants' denial of the building permit but rather damages for alleged violations of his civil rights resulting from the circumstances of that denial.[8]

■ In *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court identified three categories of cases in which abstention from the exercise of jurisdiction by a federal court is appropriate. The first type of case is that which presents a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law. 424 U.S. at 814, 96 S.Ct. at 1244 (citations omitted). Secondly, abstention is appropriate in a case which presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends

7. *See also Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977); *De Matteis v. Eastman Kodak Co.*, 511 F.2d 306 modified 520 F.2d 409 (2d Cir. 1975); *Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975); *Fralin v. Waldron, Inc. v. County of Henrico*, Va., 474 F.Supp. 1315 (E.D.Va.1979); *Cubas v. Rapid AM Corp., Inc.*, 420 F.Supp. 663 (E.D.Pa.1976).

8. In the request for relief, the complaint requests the Court to enjoin defendants to grant plaintiff the necessary building permits. However, this request is now moot because in February of 1980 defendants issued the permit as required by the order of Judge Davenport.

the result in the case then at bar." *Id.* The third type of case in which abstention is appropriate is that in which federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings which do not involve bad faith, harassment or a patently invalid state statute. 424 U.S. at 816, 96 S.Ct. at 1245.

It is clear that this case does not fall into any of the three categories in which abstention would be appropriate. Although the case presents federal constitutional questions, the resolution of those issues would not be mooted or altered by a state court determination of pertinent state law. Defendants assert that since this case involves the actions of municipal officials regarding local zoning matters that plaintiff must seek tort remedies in state court. They have cited no relevant authority for such a position, and this argument is without merit. In addition, this case does not present difficult question of state law bearing on policy issues of substantial public import; instead, the complaint alleges that certain local officials in concert with private citizens have acted to deprive plaintiff of his civil rights. Obviously, this case does not fall into the third category of cases where a party is attempting to restrain a state criminal proceeding.

In the *Colorado River Water Conservation District* case, *supra,* the Supreme Court noted that abstention from the exercise of jurisdiction is the exception not the rule. 424 U.S. at 813, 96 S.Ct. at 1244. We see no basis for abstaining from exercising jurisdiction over the instant case.

## VII. THE STATUTE OF LIMITATIONS.

Defendants further argue that the complaint should be dismissed because the action is barred by the statute of limitations. Because there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983, the limitations period to be applied is the one which would be used in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law. *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir. 1974). It is the defendants' contention that the Pennsylvania statute applicable in this case is the two year statute of limitations covering suits brought for waste or trespass to real property. 42 Pa.C.S. § 5524(4). Since the plaintiff complains of, *inter alia,* certain actions done by the defendants in 1977, and the first complaint was not filed with this Court until January of 1980, defendants urge that the case is barred by the statute of limitations.[9]

We do not believe that this suit is most analogous to a state court action for waste or trespass to real property. In the law of real property, waste is a technical term which refers to the spoil or destruction of land, houses, gardens, trees or other "corporeal hereditaments" by a person rightfully in possession of the land but who does not have fee title or the full estate.[10] At common law, a trespass to real property meant any unauthorized entry upon another's land. Although the modern view of the courts and of the Restatement (Second) of Torts is that there must be an intentional or negligent entry, a trespass to real property requires an actual physical intrusion.[11] The actions complained of in this case cannot be analogized reasonably to waste or trespass to real property.

This action is most analogous to a suit for malicious interference with a prospective contractual relation. In order to state a cause of action for interference with a prospective contractual relation under Pennsylvania law, the complaint must show (1) a prospective contractual relation between the plaintiff and another party; (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occurrence of actual harm or damage to

9. As alternative relief, defendants have moved the Court to strike those paragraphs of the complaint describing events which occurred in 1977.

10. *See,* Trespass § 121, 37 P.L.E. 479.

11. *See,* Trespass § 6, 37 P.L.E. 324.

plaintiff as a result of the defendant's conduct. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971). In preparation for building the roller rink, Mr. Riccobono alleges that he entered into an agreement to purchase the land and negotiated a commitment for financing the project on a tax–free basis. It is further alleged that as a result of defendants' actions and the delay they have caused, plaintiff has had to spend over $30,000 in interest to maintain the agreement of sale and has lost his financing commitment. Also, he claims that increases in construction costs have inflated and will continue to inflate the cost of building the rink.

 There is, however, no specific Pennsylvania statute of limitations covering the tort of interference with a prospective contractual relation. Thus, the pertinent statute is the six year limitations period which applies to "any civil action or proceeding which is neither subject to another limitation specified ... nor excluded from the application of a period of limitation by section 5531". 42 Pa.C.S.A. § 5527(6). Since the complaint in this case was filed within the six year period, no part of the suit is barred by the statute of limitations.

## VIII. PROPOSED DISMISSAL OF COUNTS V AND VI.

Alleging violations of 42 U.S.C. § 1983, Counts V and VI of the complaint claim that the governmental defendants negligently failed to carry out some of their official duties and thereby violated the plaintiff's due process rights as guaranteed by the Fourteenth Amendment. Defendants urge that these counts be dismissed on the ground that an allegation of mere negligence is insufficient to state a cause of action under section 1983.

 As we do not share defendants' view of the state of the law on this question, we will not dismiss Counts V and VI

at this time. First, the defendants have erroneously asserted that the Supreme Court's decision in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) holds that a charge of negligence without more fails to state a cause of action under the Civil Rights Act. In fact, although the petition for certiorari in the *Procunier* case raised the question of whether negligent failure to mail certain of a prisoner's outgoing mail states a claim under § 1983, the Court declined to address the issue and decided the case on immunity grounds. 98 S.Ct. at 862. Moreover, in a more recent case, *Baker v. McCollam*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court again deferred consideration of the question of whether there is liability under 42 U.S.C. § 1983 for negligent conduct.

Similarly, although the Third Circuit touched on the question of whether mere negligent conduct can give rise to § 1983 liability in the case of *Howell v. Cataldi*, 464 F.2d 272, 279 (1972), it has not decided the issue. District courts within this Circuit have taken contradictory positions on this issue, and no consensus has developed.[12]

Defendants also argue that for "policy" reasons we should find that municipal officials cannot be held liable for violations of § 1983 on the basis of simple negligence. It is their view that permitting liability on that basis would discourage citizens from serving as municipal officers. Bearing in mind the Supreme Court's recent admonition in *Baker v. McCollam, supra*, that the question "may not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations," 99 S.Ct. at 2692, we will not dismiss Counts V and VI of this complaint for failure to state a cause of action. At this stage of the proceedings, it is not clear that plaintiff will not be able to produce evidence to establish his claims as set forth in these counts.

---

**12.** *E. g., compare, Culp v. Devlin*, 437 F.Supp. 20 (E.D.Pa.1977) (§ 1983 claim can be based on negligent conduct); *Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977) (§ 1983 claim can be based on negligent conduct); *with, Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979) (no § 1983 claim for negligence); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977) (no § 1983 claim for negligence).

## IX. THE APPLICABILITY OF THE DOCTRINE OF LEGISLATIVE IMMUNITY.

The defendants also argue that as to the defendant Township Supervisors and Planning Commissioners the complaint should be dismissed because these defendants are legislators who enjoy absolute immunity from suit. In *Tenney v. Brandhove*, the Supreme Court held that members of Congress are absolutely immune from liability in a damages suit brought under 42 U.S.C. § 1983 [13] for acts done within their legislative role and which are "legitimate legislative actions". 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951).

There are at least two reasons why we must reject defendants' legislative immunity argument. First, the complaint does not challenge any actions of the defendants which can be described as legislative in nature. Rather, the plaintiff alleges that these defendants arbitrarily and capriciously refused to grant him the necessary building permits. The grant or denial of an individual's application for a building permit cannot be characterized as a legislative act. Secondly, even if the challenged actions of defendant supervisors and commissioners were legislative in nature, it is not clear whether the doctrine of absolute legislative immunity stated in *Tenney v. Brandhove* would apply in this case. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court held that members of a regional planning agency, like federal and state legislators, were entitled to absolute immunity in a damages action brought under § 1983. In a footnote in that opinion, however, the Court specifically reserved decision on the question of whether individuals performing legislative functions at the purely local level, such as county supervisors, enjoy absolute immunity from suit for damages under § 1983. 99 S.Ct. at 1179, n.26. Also, defendants have failed to cite nor have we

discovered any decisions of the Third Circuit which holds that the doctrine of absolute immunity for legislators applies to local officials whose duties include legislative tasks. Therefore, we deny defendants' request that we dismiss parts of the complaint on the basis of the alleged legislative immunity of certain defendants.

## X. PLAINTIFF'S CAUSE OF ACTION DIRECTLY UNDER THE FOURTEENTH AMENDMENT.

In Count IV of the complaint, plaintiff attempts to state a claim for damages directly under the Fourteenth Amendment against the individual governmental defendants who allegedly violated his rights to due process and equal protection of the laws. Defendants argue that this count should be dismissed because neither the United States Supreme Court nor the Third Circuit has ever held that the Fourteenth Amendment will support such a cause of action.

In order to dispose of this issue in the context of this case, it is not necessary to discuss, analyze or decide the question of under what, if any circumstances, a damages action can be brought directly under the Fourteenth Amendment. In *Rogin v. Bensalem Township*, 616 F.2d 680, 686 (3d Cir. 1980), the Third Circuit restated its view, first enunciated in *Mahone v. Waddle*,[14] that a Fourteenth Amendment remedy should not be implied if the plaintiff has an effective remedy under a federal statute. In the instant case, the actions by defendant officials complained of and the relief sought in Count IV mirror plaintiff's claims under sections 1983 and 1985. Mr. Riccobono, therefore, can obtain adequate redress through his federal statutory claims. Accordingly, under the principles set forth in *Mahone v. Waddle* and *Rogin v. Bensalem Township*, we will dismiss plaintiff's cause of action brought directly under the Fourteenth Amendment.

---

**13.** At the time the *Tenney* case was decided, section 1983 was codified as 8 U.S.C. § 43.

**14.** 564 F.2d 1018, 1024–25 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).

We enter the attached order granting in part and denying in part the motion to dismiss.