Haskell M. MOORE, Plaintiff,

v.

Col. Edgar G. HELM, Jr., et al., Defendants.

No. C 81–0045–L(B).

United States District Court, W.D. Kentucky, Louisville Division.

April 1, 1983.

Fred E. Fischer, Louisville, Ky., for plaintiff.

William T. Warner, Harry Sykes, Asst. Jefferson County Atty., Louisville, Ky., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BALLANTINE, District Judge.

This matter was tried to the Court without a jury on March 29 and 30, 1983. It is now submitted for judgment.

### SUMMARY OF EVIDENCE

Plaintiff, Haskell Moore, joined the Jefferson County Police Department (JCPD) in April, 1963. He received promotions in due course and in 1979, he had reached the rank of lieutenant. On April 16, 1979, plaintiff resigned to enter the automobile business.

Plaintiff testified that he became disillusioned with the automobile business and decided to apply for reinstatement with the JCPD. He had maintained his membership in the Jefferson County Lodge of the Fraternal Order of Police (FOP) and regularly attended meetings at which he discussed his desire to return to police work.

Rule XV, Section I of the *Official Rules and Regulations of the Jefferson County Police Merit Board* provides:

> Any person who has been a member of the Police force for a period of not less than 12 months and who has resigned therefrom or who has been separated from the service without any delinquency or misconduct on his part may be reinstated at any time within two (2) years by the Board, with the advice and consent of the appointing officer and the County Judge, in the position not higher than one he formerly held, or a position to which he could have been legally transferred during his former employment.

In early 1980, a Title VII action was commenced before Chief Judge Allen by two JCPD officers, one black and one white, charging racially discriminatory practices by the Department. See *Baker v. County of Jefferson*, No. C 80–0039–L(A). After a trial before Judge Allen a consent decree was entered.[1] At that trial, pursuant to a request from John Arnold, one of the plaintiffs, Moore testified. The transcript of his testimony is 4 pages long. During that testimony he was asked whether the transfer from the plain clothes section to the uniform section at the instance of the departmental command was perceived by officers as a form of punishment. His response was:

> "It is more or less an informal form of punishment if you're placed back into the district by the command structure; for whatever reason it is, it is looked upon by the men in the district as . . .
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> As an informal type of punishment. You carry a stigma if you are put back out by the command."

At some point after his testimony in *Baker,* plaintiff made formal application for reinstatement, to which defendants did not give their advice and consent. This action was commenced alleging that defendants' action was in retaliation for plaintiff's testimony in *Baker.*

The Court has heretofore dismissed all claims except those arising under Title 42 U.S.C. Sections 1981, 1983 and 2000d and the 14th Amendment of the Constitution.

At the trial plaintiff testified that he called defendant Helm in early August, 1980, to discuss his reinstatement. Late in August, 1980, plaintiff met with Helm at a restaurant on Dixie Highway. After some general conversation, plaintiff asked Helm if he had made a decision as to his reinstatement. Plaintiff testified that Helm said that plaintiff's conduct in not disassociating himself from the men in his command was one of the factors which would be considered in deciding his application for reinstatement. Plaintiff testified further that Helm said that he found plaintiff to be immature, citing as an example his testimony in the Baker case.

Plaintiff applied for reinstatement and was notified by the Merit Board that Helm would not approve his application.

Plaintiff further testified that his personnel file disclosed no reprimands for immaturity or brutality.

On cross-examination, plaintiff was asked about the political jockeying that followed the election of defendant McConnell as County Judge/Executive of Jefferson County. One of the leading campaigners for the office of Chief was Lieutenant Colonel Fred Roemele. Plaintiff said that Roemele had offered him a high ranking position if he, Roemele, became Chief.

Plaintiff further admitted that he may have told defendant Helm that he knew that he, plaintiff, was immature but he further testified that he also told Helm that he had overcome his immaturity. He admitted the discussions with defendant in which his performance was criticized.

---

1. The terms of the consent decree are not material to the issues raised in this action.

At the meeting with Helm, Helm brought up the matter of a number of cartoons admittedly drawn by plaintiff which lampooned command officers, particularly in the district to which plaintiff was assigned.

Plaintiff also offered the conclusory assertion that his testimony in the Baker case was the sole cause of the denial of his application for reinstatement. He admitted that he did not know if other applicants for reinstatement had been rejected.

In the summer of 1980 and before final action on his application, he visited with Captain Anderson, who had been his superior and he called Lieutenant Larry Grant on the telephone. Grant had been assigned to the same district as plaintiff.

Plaintiff admitted that he and Grant had had conflicts which created problems with Captain Anderson. We should note at this point that Grant was the subject of 5 cartoons drawn by plaintiff, none of which can be considered favorable or of particular artistic merit.

Plaintiff testified that he told Roemele and Ronald Pike, President of the FOP, that Helm had said that his application for reinstatement was rejected because of plaintiff's testimony in the Baker case.

In October, 1980, defendant Helm told plaintiff that the decision to reject his application was final.

Plaintiff conceded that at the time he was in charge of the armed robbery section of JCPD, he composed a motto "Waste one—want not." He offered the incredible testimony that this slogan was used to indicate that once a robbery suspect had been apprehended and sentenced, he was "wasted" and was no longer on the wanted list. His commanding officer ordered the motto off the bulletin board with directions that it not be placed there again. Thereafter, plaintiff posted a notice on the bulletin board which concluded with the notation "Motto: (forbidden by higher authorties [sic]."

Plaintiff next called Jeanette Priebe who is personnel director of Jefferson County and acting secretary of the Merit Board. She traced the path of the Baker litigation and testified that she and the defendant Helm had labored long hours and conferred on many occasions with counsel for plaintiffs in *Baker* in an effort to reach a decision as to the contents of the final consent decree. Miss Priebe testified that defendant Helm was in favor of the consent decree and expressed his satisfaction with it on many occasions.

Plaintiff next called John W. Arnold, who had been a plaintiff in the Baker case. Arnold testified that plaintiff told him as early as November, 1979, that he wanted to return to JCPD. Arnold further testified that after he filed his complaint with EEOC defendant Helm became less friendly and cordial toward him. He admitted that it was probable that counsel for defendants in the Baker case had told Helm not to communicate directly with plaintiffs. Arnold further admitted on cross-examination that Judge Allen had upheld his, Arnold's, transfer from the criminal investigation division to uniformed patrolman holding that it was a legitimate exercise of administrative authority.

Plaintiff next introduced the testimony of Fred Roemele, who is now Chief of the Jeffersontown, Kentucky, Police Department.

Roemele was a member of the JCPD for 27 years and at the time of the election of Judge McConnell, he was Assistant Chief.

Roemele testified that he had worked with plaintiff and that he knew plaintiff had applied for reinstatement. Roemele testified that he discussed the application with defendant Helm in the early spring of 1980 and on many occasions thereafter. He testified that Helm told him that he would discuss the application with other commanding officers. Defendant indicated to Roemele that he felt that plaintiff was "heavy handed."

Roemele also testified that he talked to Judge McConnell about plaintiff but was told by McConnell that he should clear any further conversations with McConnell with defendant Helm. Roemele testified that

Helm told him not to talk to Judge McConnell.

Roemele testified that in the late summer of 1980 he again spoke to defendant Helm about plaintiff's application and that Helm said that he would not take plaintiff back because he had testified in the Baker case. On cross-examination Roemele admitted that on January 26, 1981, he was reduced in rank by Judge McConnell and Helm and transferred to the administrative services section which includes the radio room, the record room and other clerical functions of the department, an undesirable assignment.

Baker, plaintiff in the action before Judge Allen, wrote a letter to Helm charging racial discrimination. Roemele denied telling Helm that he could not handle the investigation because he too had been guilty of racial slurs against Baker.

Roemele further admitted that he considered himself to be the leading candidate in the selection of the Chief of Police. He testified that he was told by McConnell that he would be Chief and that he offered Moore a position as a ranking commanding officer.

Plaintiff next introduced the testimony of Donald Webster. Webster is a neighbor and friend of plaintiff and he testified that he talked to defendant Helm 3 or 4 times at Cliff Hagan's Ribeye on Dixie Highway. He testified that he did not know Helm before these conversations, but that when he learned of Helm's position he asked him about plaintiff's application for reinstatement. Webster testified that Helm told him that plaintiff couldn't be rehired because of the "federal suit."

Plaintiff's final witness was Russell McDaniel, who served as Chief of County Police until Judge McConnell's election. Chief McDaniel's testimony added little substance to the matters at issue. He did testify that as Chief he usually took back officers who left in good standing and applied for reinstatement.

After plaintiff had rested his case, defendants introduced the testimony of William L. Hoge, III, an Assistant Jefferson County Attorney who handled the Baker case. He testified that plaintiff had been called as a rebuttal witness and, except for a perfunctory cross-examination which established only that plaintiff Moore knew nothing about the controversy involved in the Baker case, there was nothing in plaintiff's testimony which could be construed as testimony against defendant Helm. Mr. Hoge further testified that Helm expressed no opinion one way or the other about plaintiff's testimony.

Defendant next called Ronald Pike who, as we have noted, is President of the FOP. Pike testified that the FOP sent a petition in support of plaintiff's application to the defendant, but that it did no more. He testified that until he was interviewed by counsel for the defendants he did not know that plaintiff's claim asserted that his testimony in the Baker case was the reason for the denial of his application.

Defendants next called Kenneth Graham, Associate Chief of JCPD who is the second ranking officer in the department. He testified that he too was a candidate for Chief in 1978, but that he did not actively campaign for appointment. He testified that after defendant Helm was appointed Chief he, Graham, was promoted to his present position by the defendants.

He testified that defendant Helm came to him to discuss plaintiff's application for reinstatement and that he, Graham, told Helm that he had "problems" with plaintiff's application. Graham had received reports of immature conduct on the part of plaintiff, reports of the use of excessive force against suspects and plaintiff's general bitterness toward the Department when he did not receive the promotion which had been promised him by Roemele.

Graham also testified that Roemele had asked him about the problems that Graham had with the plaintiff. Graham told Roemele that he would not take plaintiff back and that in the one conversation he had with Roemele there was no mention of plaintiff's testimony in the Baker case. Graham testified that he did not know that plaintiff had testified in the Baker case.

On cross-examination, Graham testified that he had noticed a change in plaintiff in the last 3 or 4 years and that he felt that

this change was detrimental to the operation of the department.

Defendant next called James E. Montgomery, Deputy Chief in charge of the Detective Bureau. He testified as to dissension between plaintiff on the one hand and Lieutenant Grant and Captain Anderson[2] on the other hand. He learned of plaintiff's application for reinstatement when either defendant Helm or Graham asked for an opinion. He told defendant Helm that he thought it was not in the best interest of the department to take plaintiff back. He admitted he had had differences with plaintiff, primarily centering around 2 instances in which he found plaintiff, with officers under his command, eating together and having drinks together. He testified that this was a clear violation of departmental policy.

On cross-examination Montgomery testified that he had no personal knowledge of the use of excessive force against suspects or prisoners by plaintiff.

The last witness offered by defendants was the defendant, E.G. Helm, Jr.

He testified that he was appointed Chief in February, 1978, by Judge McConnell after several interviews and after McConnell and his staff had interviewed all officers in the department who held the rank of Lieutenant or higher.

Helm testified that plaintiff first applied for a leave of absence which was denied for the reason that an officer on leave of absence could not be replaced and that the department could not function properly if it were short one lieutenant.

Helm testified in the summer of 1980 he learned that plaintiff wanted to be reinstated. He told plaintiff that he had concerns about his return to the department and that these concerns centered around his immaturity and the reports of the use of force. There was also reference to an incident in which a gun was fired in the old county police headquarters. Helm testified that his only reference to the Baker litigation in his conversation with plaintiff had to do with vacancies and how they could be filled

under the consent decree. He testified that he made no reference to plaintiff's testimony at all and that in fact he agrees with what plaintiff said. He testified that he made his final decision not to reinstate plaintiff in October, 1980.

Helm admitted that he had met Webster and that they had discussed the Baker litigation, but in the same context as Helm had discussed it with plaintiff. Helm further denied that he told Roemele that he would not take plaintiff back because of his testimony in the Baker case.

Helm talked to numerous commanding officers, all of whom recommended that plaintiff's application be denied. Helm further testified that he was contacted by 3 officers, including Lieutenant Grant, and all were opposed to his reinstatement.

When questioned about the motto "Waste one—want not", Helm indicated that the motto to him meant that if an armed robber were killed by the police, he would be considered "wasted", a definition with which the Court agrees.

Helm also testified that he has denied other applications for reinstatement both before and after he received plaintiff's application.

On rebuttal plaintiff testified that the cartoons which were directed at Lieutenant Grant were intended to lessen the tension which existed in the C District of JCPD. He testified that he knew that Grant was the target of anonymous and obscene phone calls and bitter criticism of his policies. It would require a degree of innocence which the Court does not possess to conclude that these cartoons did not exacerbate an already volatile situation.

### FINDINGS OF FACT

1) Plaintiff, Haskell Moore, joined JCPD in April, 1963. By April, 1979, he had attained the rank of Lieutenant. On April 16, 1979, he resigned from JCPD to enter the automobile business.

2) At the time of his resignation, plaintiff's personnel file contained no reprimands or other adverse disciplinary records.

---

2. Anderson was referred to both as "Captain" and "Major" at trial.

3) Under Rule XV of the Jefferson County Police Merit Board quoted in the Court's summary of the evidence, plaintiff was eligible to apply for reinstatement to JCPD within two years of his resignation and he did apply timely.

4) Defendant Helm was at all times after plaintiff's resignation the Chief of JCPD and defendant McConnell was at all times after plaintiff's resignation the County Judge/Executive of Jefferson County, Kentucky. Neither defendant gave his advice and consent to plaintiff's reinstatement.

5) Plaintiff testified as a rebuttal witness for plaintiffs in *Baker v. County of Jefferson,* C 80–0039–L(A) (W.D.Ky., 1980). His testimony is contained in four pages of a transcript and added but little, if any, support to the claims of the plaintiffs in that action.

6) Defendant Helm heard plaintiff's testimony or at least knew its substance and he agreed with the opinion expressed by plaintiff.

7) Plaintiff's performance as a police officer manifested evidence of immaturity in several respects. His cartoons attacking Lieutenant Grant are not of a character calculated to promote harmony within the department. His "motto" appended to the armed robbery bulletins cannot be construed to be anything more than an open invitation to the men under his command to spare the Commonwealth the burden of trying armed robbery suspects by eliminating them permanently—in other words, killing them.

8) Defendant Helm, at the time of plaintiff's application for reinstatement, consulted with other commanding officers, including Associate Chief Graham and Deputy Chief Montgomery. All officers recommended that plaintiff's application be denied.

9) Other commanding officers, including Lieutenant Grant, the target of plaintiff's cartoons, and Major Anderson, who had ordered the "motto" removed from the bulletin board, sought out defendant Helm to recommend denial of plaintiff's application.

10) The only commanding officer who favored plaintiff's reinstatement was Lieutenant Colonel Fred Roemele, who had campaigned for appointment as Chief.

11) Although defendant Helm had no direct knowledge of the matters concerning plaintiff which were related to him by his subordinates, he relied upon those statements in reaching his decision.

12) Roemele's testimony concerning his conversation with defendant Helm, a conversation in which Helm is alleged to have said that his decision not to reinstate plaintiff was based on his giving testimony in the Baker case, may be substantially discounted in light of Roemele's obvious bias against the defendants. Roemele was miffed when he was not named Chief and he was enraged when he was demoted and assigned to an undesirable position.

13) The testimony of the witness Webster will not support a conclusion that plaintiff's testimony in the Baker case was a factor in defendant Helm's decision. The logical inference to be drawn from the conversation is that Helm was concerned about the impact of the consent decree. The Court further finds that it is highly improbable that defendant Helm would discuss policy matters, particularly as they related to personnel, with a stranger to the JCPD.

14) Plaintiff's admission that defendant Helm had raised the question of plaintiff's immaturity militates against a finding that Helm did any more than mention the consent decree as an additional impediment to plaintiff's reinstatement.

15) Plaintiff's testimony in the Baker case was not a factor in defendant Helm's decision, a decision in which the defendant McConnell concurred.

### CONCLUSIONS OF LAW

1) The Court has jurisdiction of the parties and the subject matter. Title 42 U.S.C. Sections 1981, 1983 and 2000d.

2) Retaliation based on racial animus will support an action asserting a civil rights violation, *Winston v. Lear-Siegler,* 558 F.2d 1266 (6th Cir.1977).

3) On the other hand, "the federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

▇ 4) Plaintiff has failed to demonstrate a protectible property interest in reinstatement. "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents, Etc. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

▇ 5) Defendant Helm's testimony as to statements made to him concerning plaintiff's qualifications for reinstatement are not inadmissible hearsay since they were not offered in evidence to prove the matter asserted. F.R.Evid. 801(c). The testimony was offered to establish defendant Helm's state of mind.

"[T]he hearsay rule bans in-court repetition of extra-judicial utterances only when they are offered to prove the truth or falsity of their contents. The rule does not apply to statements offered merely to show that they were made. (Citations omitted.) Smieca's proffered statement was not hearsay under Federal Rule of Evidence 801(c): it was not offered to show that the substance of Hanley's utterance was either true or false. * * * * Gibson offered the utterance solely for the fact that it was made by Hanley and heard by Gibson. Smieca's account of Hanley's suggestion was testimony about a circumstantial utterance, which could have been received properly on the issue of Gibson's belief or state of mind in consequence of the utterance." *United States v. Gibson,* 675 F.2d 825, 833 (6th Cir.1982).

▇ 6) While the issue of Helm's state of mind would preclude summary judgment, *Hutchinson v. Proxmire,* 443 U.S. 111, n. 9 at 120, 99 S.Ct. 2675, n. 9 at 2680, 61 L.Ed.2d 411 (1979), plaintiff has failed to meet his burden of showing racially based animus in defendant Helm's decision to deny his application for reinstatement. The Court finds that a preponderance of the evidence supports the conclusion that defendant Helm's decision was based on a good faith belief that he was acting in the best interest of JCPD. Even if he were in error in his decision:

"We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood, supra,* 446 U.S. at 349, 96 S.Ct. at 2080.

7) Plaintiff having failed to establish the allegations of his complaint, judgment will be entered in favor of defendants and dismissing plaintiff's complaint.